Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PAUL S. GREWAL, MAGISTRATE JUDGE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:15-MJ-70142-MAG |
| | ) | |
| ARMIN HARCEVIC, | ) | |
| | ) | |
| Defendant. | ) | San Jose, California |
| _____ | ) | Friday, February 13, 2015 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**
FTR 1:56 p.m. - 2:19 p.m. = 23 minutes


**APPEARANCES**:


For Plaintiff:          MELINDA L. HAAG, ESQ.
                        United States Attorney
                        150 Almaden Boulevard, Suite 900
                        San Jose, California  95113
                BY:  **AMBER S. ROSEN**
                        Assistant United States Attorney

For Defendant:          STEVEN KALAR
                        Federal Public Defender
                        55 South Market Street, Suite 820
                        San Jose, California  95113
                BY:  **GRAHAM ARCHER**
                        Assistant Federal Public Defender


Also Present:   LaDreena Walton, Pretrial Services Officer


Transcribed by:         Leo T. Mankiewicz, Transcriber
                        leomank@gmail.com
                        (415) 722-7045

```
 1    Friday, February 13, 2015

 2                                                        1:56 p.m.

 3                    P R O C E E D I N G S

 4              (Defendant present in court.)

 5         THE COURT:  Mr. Rivera, whenever you're ready, you may

 6    call the next matter, sir.

 7         THE CLERK:  Calling United States versus Armin

 8    Harcevic, case number 15-MJ-70142-MAG, matter on for detention

 9    hearing.

10              Please state your appearances.

11         MS. ROSEN:  Good afternoon, your Honor.  Amber Rosen

12    for the United States.

13         THE COURT:  Good afternoon, Ms. Rosen.  Welcome back.

14         MR. ARCHER:  Good afternoon, your Honor.  Graham

15    Archer for Mr. Harcevic, who's present before the Court in

16    custody.

17         THE COURT:  Mr. Archer, good afternoon once again.

18              Mr. Harcevic, good afternoon, sir.

19         THE DEFENDANT:  Good afternoon.

20         THE COURT:  Mr. Harcevic, we are here this afternoon

21    for a hearing on the government's request that you remain in

22    custody as this case moves forward.  This hearing is something

23    we refer to here in the court system as a bail hearing or a

24    detention hearing.

25              The Court's objective in this hearing is to determine
```

1   whether I can set conditions that will allow you to be released

2   or whether, in fact, no such conditions can be set and your

3   further detention is required.

4          Mr. Archer undoubtedly has much to say about this, so

5   I'm eager to hear what he believes should be done, but because

6   the government is the one making this request, I'll start with

7   the government prosecutor.  I'll then turn to Mr. Archer for

8   your position.

9          Do you understand this, sir?

10         **THE DEFENDANT:**  Yes.

11         **THE COURT:**  All right, let's proceed.  Ms. Rosen, go

12   ahead.

13         **MS. ROSEN:**  Thank you.  As the Court is aware, this is

14   a case where detention is presumed under 3142(e)(3)(C), because

15   the crimes with which the defendant is charged are crimes of

16   terrorism.

17         We believe that defendant cannot overcome the

18   presumption because he is both a flight risk, and that's

19   primarily the purpose, but also there's a danger posed from his

20   release.

21         In making this determination, as the Court is aware,

22   it needs to consider four things:  The nature and circumstances

23   of the offense, the weight of the evidence, the history and

24   characteristics of the defendant and the nature and seriousness

25   of the danger, and so I'd like to go through each of those

1    factors.

2            **THE COURT:**  Go ahead.

3            **MS. ROSEN:**   In terms of the nature and circumstances

4    of the offense, the charges are extremely serious.  In fact,

5    one could scarcely think of more serious offenses than

6    supporting and providing material support to terrorists.

7            The indictment alleges that defendant facilitated the

8    conspiracy by contributing personal money intended for it to be

9    used in support of Pazara, who's one of the fighters who was in

10   Syria and Iraq fighting in support of ISIS and Al Qaeda.  It

11   alleges that the defendant knew that Pazara and others were

12   engaged in violent activities overseas, including conspiring to

13   murder and maim other people.

14          The indictment further states that he collected money

15   from others and sent his own money to his co-defendant Siki

16   Hodzic, and they sent $1,500 to Siki Hodzic, who then

17   transferred it to Turkey, in order that it be sent to Pazara

18   and others fighting for ISIS and Al Qaeda.  It also states that

19   Pazara told someone that he had been part of a mission which

20   killed 11 people.  In terms -- so the seriousness of the

21   offense and the presumption, obviously, works toward detention.

22          In terms of the weight of the evidence, we have here

23   an indictment, so there's probable cause has already been

24   conclusively determined against the defendant for the offenses

25   for which he's charged.

1           In terms of his history and characteristics, the

2    defendant has no employer.  He has an unstable work history.

3    He is self-employed, sometimes as a handyman, but it's not

4    stable work.  His wife is also unemployed, and neither has any

5    employer in St. Louis.  He has no known financial assets, no

6    property anywhere in the United States or abroad.

7           While he currently lives here in San Jose with his

8    wife and children, they just moved here in January of 2015 and

9    are renting.  We believe that he left St. Louis where he had

10   been living for several years before coming to San Jose because

11   one of his co-defendants believed he was being investigated.

12   So basically, when the heat was on in St. Louis is when he

13   moved here.

14          He's not a citizen of the United States.  He is a

15   citizen of Bosnia, where his mother still lives.  He has

16   traveled there four times between 2002 and 2009.  He was denied

17   American citizenship based on bad moral character, and he has a

18   brother who's known to have traveled to Syria, as well.

19          In terms of danger, we've based his -- the fact that

20   he does pose a danger based primarily on the nature of the

21   crime and the fact that there are ongoing calls from ISIS and

22   Al Qaeda for violent activities, and we believe that this could

23   be a triggering event, the arrest of defendant and his

24   co-defendant.  So we believe there is some danger, although, of

25   course, we have no history of violence by this particular

1    defendant.

2           This is a very serious offense.  This is not our case.

3    This is, as you know, charged out of the Eastern District of

4    Missouri.  We believe we have a responsibility to deliver the

5    defendant to Missouri to face the charges, and so we would ask

6    for detention in this case.

7           **THE COURT:**  All right, thank you, Ms. Rosen.

8           Mr. Archer, you may proceed.

9           **MR. ARCHER:**  Thank you, your Honor.  We're in a little

10   bit of a tenuous position here because the report that is

11   before the Court lists his wife as a surety and a couple of

12   other folks that are unsure.

13          In the interim, I've had conversations with a number

14   of folks, many of whom are present in the court, and I would

15   like to acknowledge the people that are here on behalf of

16   Mr. Harcevic.  They are both close friends and also members of

17   his mosque, as well as family members as well as his three

18   young children, who have been making a bit of a ruckus in the

19   courtroom prior to this case being called.

20          The defendant -- I'd like to address a few of the

21   government's points first.  The defendant's return with his

22   family to San Jose was not a flight from St. Louis.  He lived

23   in St. Louis, he had previously lived in San Jose, and Pretrial

24   Services has verified that he had -- while he came to the U.S.

25   in 1999 in L.A., he settled in San Jose and had traveled back

1    to live in St. Louis for a little while with family.

2         He has friends and family who are here.  The friends

3    have known him for three or more years, are close friends, are

4    with him for five or more days a week in prayer services and

5    meetings.  They are here to speak with the Court about his

6    gentle nature as well as speak to the Court about their

7    viability as surety, both based on their income, if the Court

8    is interested in an unsecured bond, as well as the viability of

9    their equity that they have in their homes, which is quite

10   significant.

11        And as to the flight risk, the travel to Bosnia was to

12   visit his mother.  The travel has ceased since the birth of his

13   first child.  He hasn't left the country in a while.  His

14   passport is expired.

15        The government's concerns about danger, from my

16   perspective, are entirely speculative.  They are at some sort

17   of general suggestion that there would be retaliation for the

18   arrest of the people charged in this case.  I have no idea why

19   that would cause the father of three, with significant roots

20   both here and in St. Louis, to suddenly flee or cause some sort

21   of danger.

22        The government is correct that there has been a

23   document filed that establishes probable cause from a grand

24   jury in St. Louis as to some of these charges, but it's

25   instructive of that document -- the government speaks, in some

1    sense, in generalities as to communications that occurred.  The

2    document does not allege that Mr. Harcevic was aware of any

3    communications about killing anybody.  There's an overt act

4    alleged in paragraph 23 that suggests that Mr. Harcevic sent

5    $1,500 to another co-defendant.  It's not even a transfer out

6    of the country to a contact out of the country.  It's a

7    transfer within the country to another co-defendant.

8          I'm failing to see where a history of inappropriate

9    travel would be, I'm failing to see where the danger would be,

10   and but for some hesitation on the part of sureties who were

11   concerned because of what has been a recent history of the

12   interaction of their community with the FBI and others, would

13   have stepped forward as sureties.  But they're available here

14   today if the Court would like to interview them, and they are

15   available not only to provide absolutely rock-solid sureties

16   based on their income and their financial situation, but also

17   to potentially provide either cash or property sureties to

18   permit Mr. Harcevic's release.

19         He has a stable home in San Jose with his wife.  They

20   are renting, but he is the father of three children.  He is a

21   handyman, has worked as a property manager at a number of

22   properties.  He's described by those that I've spoken with in

23   this case as a gentle and caring man with a focus on charity.

24         So I'd be happy to address any of the concerns of the

25   Court.  I'd also be interested in the Court inquiring of any of

1     the potential sureties that are available today.

2         **THE COURT:**  Mr. Archer, one concern I have has to do

3     with the resources available to Mr. Harcevic outside this

4     country should he choose to flee.  Do you want to speak to

5     that?  As I understand it, his mother lives in Bosnia still,

6     correct?

7         **MR. ARCHER:**  That is correct, your Honor.  His father,

8     however, lives in St. Louis, and I believe the balance of his

9     family lives here.  He is not a man of means.  The family home

10     in Bosnia, I believe, is valued at about 20,000 American

11     dollars.  I believe we have an extradition treaty with Bosnia.

12     I don't think that's an issue, and he doesn't have any ties to

13     any other countries.

14         **THE COURT:**  Are you aware of any history of our

15     successfully extraditing any individuals from Bosnia?

16         **MR. ARCHER:**  I have not had -- I have not had cases to

17     that issue, but I -- he's a legal permanent resident here with

18     an established family and ties to the community.  The fact that

19     he's -- that he emigrated from Bosnia after a war and a

20     genocide should not suggest that he's rushing to go back there.

21     In fact, he has not gone back there, even for pleasure, since

22     the birth of his children.  He's been here, caring for them as

23     a father.

24         And to address the government's concerns about the

25     seriousness of the case, I mean, frankly, I understand that

1  there's a great fear of terrorism in this country right now,

2  and it's instructive that he's not charged in Count 2, which is

3  the conspiracy to commit harm to people abroad.

4         Frankly, your Honor, I stand before the Court

5  routinely on 10-, 15-gram methamphetamine sales that carry, you

6  know, unbelievably higher, and they carry life terms, they

7  carry five-year and ten-year mandatory minimums.

8         So for the government to stand here and say this is

9  the most possible crime, Congress has not been shy about

10  legislating terrorism.  This is a 15-year top.  I mean, it's

11  less than a wire fraud count, it's less than a bank fraud

12  count, it's less than a mail fraud count.

13         So I don't think the seriousness of the crime,

14  especially as alleged, a $1,500 transaction to a co-defendant,

15  approaches what could be described as a serious and scary

16  crime.

17         **THE COURT:**  All right, Mr. Archer, I'll give you an

18  opportunity to weigh in further, but I'd like to hear from

19  Ms. Rosen in response to what you had to say, unless you have

20  anything further you wish to tell me now.

21         **MR. ARCHER:**  No, your Honor.

22         **THE COURT:**  Okay, thank you.

23         Ms. Rosen?

24         **MS. ROSEN:**  Thank you, your Honor.  Just to reiterate,

25  we do believe that he is a flight risk with his unstable work

1    history, lack of assets, lack of property, ties to Bosnia.

2            I failed to mention, he does have these two arrests,

3    one from August of 2014 which we don't even know what it was

4    for, but he's on the --

5            **THE COURT:**  I wanted to ask --

6            **MS. ROSEN:**  -- person of interest list.

7            **THE COURT:**  -- you about that.  Does the government

8    have any further information about that?

9            **MS. ROSEN:**  I do not have any further information

10   about that.  So these are issues of concern.

11           In terms of the seriousness of the offense, Congress

12   has said that it's a serious offense, which creates a

13   presumption for detention based on the seriousness of the

14   offense.  Moreover, he is charged in a conspiracy to provide

15   material support to terrorists who were killing people

16   overseas.

17           So we disagree with Mr. Archer's characterization of

18   the offense, and the probable cause determination of that is

19   significant, and the Supreme Court has said that the probable

20   cause findings supporting a grand jury indictment is a

21   significant factor for purposes of determining a defendant's

22   release conditions, and that's *Kaley v. United States*.

23           So we believe that detention is appropriate here,

24   regardless of the sureties, and we would submit it on that,

25   your Honor.  Thank you.

1          **THE COURT:**  Thank you.

2          Mr. Archer?

3          **MR. ARCHER:**  Your Honor, we have a room full of

4    sureties that easily rebut the presumption.  The presumption

5    exists in a number of cases, including, as I mentioned before,

6    drug transactions, as well.  I mean, there's nothing about a

7    15-year maximum penalty case that would make this some kind of

8    special presumption.  This is the same presumption that's

9    overcome with far less secured surety.

10          So if the Court has any concern about the viability of

11    the sureties -- and I want to be clear, I'm not offering the

12    people in the -- only in the report, though his sister is

13    available and here as a surety, but both of the Alayleh

14    brothers are here, Majed and his brother Mehyeddine.  They are

15    both here and have -- in terms of the sureties that I've

16    encountered in my cases in the last, you know, a few years,

17    this is the strongest showing that I've seen, and these are

18    some of the most solid sureties that I've ever been able to

19    offer to the Court, and I think the presumption is well

20    rebutted.

21          Simply having a mother abroad and being a legal

22    permanent resident, if that were the standard for detention in

23    a presumption case, then everyone would be detained.  This is

24    exactly the scenario where I understand the government's

25    concerns, but this is exact the scenario where we have

1    extraordinary community support, and both the cash and the

2    property bond to allay the Court's concerns.

3             THE COURT:  All right, is there anything further you

4    wish to add, counsel?

5             MR. ARCHER:  No, your Honor.

6             THE COURT:  Officer Walton, let me welcome you again.

7    It is my understanding that Pretrial Services is recommending

8    detention, is that correct?

9             PRETRIAL SERVICES OFFICER:  That is correct, your

10   Honor.

11            THE COURT:  Okay, and I also understand that when you

12   spoke to at least two of the proposed sureties, there was a

13   hesitation.  Was that hesitation largely in light of the

14   uncertainty of the amount of the bond?  Was that the issue?

15            PRETRIAL SERVICES OFFICER:  Yes.  Defense counsel did

16   provide me with the names and the contact information early

17   this morning for some potential sureties.  My concern was that

18   none of these individuals were mentioned during my interview of

19   the defendant.  They also weren't mentioned when I spoke to his

20   wife.  She only named one good friend, and his information is

21   included in this report.

22            So I felt that if there were people that were really

23   close to the defendant and his wife, that their names would

24   have been provided immediately, and they were not.  It's just,

25   this morning, there were several people apparently came forward

1   that I haven't had an opportunity to interview.  So we're

2   continuing to recommend detention at this time.

3           **THE COURT:**  All right, thank you.

4           Mr. Archer, anything further?

5           **MR. ARCHER:**  Yes, your Honor, I can address that.

6   There was a shyness, I think -- first of all, the defendant,

7   while he does have a misdemeanor conviction for being an

8   unlicensed handyman in 2005, has never been in a situation like

9   this before in his life.  His wife has never, either.  She did

10  not imagine that the members of the community would be willing

11  to step forward and did not -- in fact, Mr. Harcevic was not

12  asked, do you have close friends, you know, and are other

13  members of your community willing to step up as sureties.  So

14  I apologize for the delay in providing those sureties.

15          From my conversations with them, I am very satisfied

16  that they would provided adequate sureties.  There -- a number

17  of them are present in court today, and I would invite the

18  Court to speak with them, including Majed Alayleh, who's listed

19  in the report, as to how they know Mr. Harcevic, or if the

20  Court wishes to have that done by Pretrial Services, I would

21  understand, as well.

22          **THE COURT:**  All right.

23          **MS. ROSEN:**  Your Honor, there's one other that we

24  have --

25          **THE COURT:**  Go ahead, Ms. Rosen.

1          **MS. ROSEN:**  I don't know -- I mean, we don't know who

2    these sureties are and we don't know how much money they have

3    and whether they're planning to put up cash or property.

4    Obviously, those are some of the inquiries that would be

5    undertaken if that's the route the Court wants to do.

6          In terms of property, though, the only thing I would

7    say about that is, you know, of course, this defendant needs to

8    appear in Missouri.  All of the other co-defendants have been

9    picked up, arrested, detained and removed to St. Louis.  You

10   know, two are already in St. Louis with the other four, and so

11   that just seems -- I don't know how long that would take, but

12   it seems like it could delay the proceedings quite a bit, and

13   it might be better just to let that all occur in Missouri, if

14   that's where the Court's willing -- is intending to go, in

15   terms of the property bond.

16         **MR. ARCHER:**  I completely disagree.  We can prepare a

17   property bond by the end of next week; certainly, if the

18   Court's inclined, perhaps even sooner, and the property's here.

19   It doesn't make any sense, when his ties and his sureties are

20   here, to continue the proceedings in St. Louis.

21         **THE COURT:**  All right.  Here's what we're going to do.

22   This is a presumption case, and I think it's very important to

23   keep that in mind.  What that presumption means is that our

24   Congress has decided that in certain cases, the burden lies

25   with the defendant, rather than the government, on the issue of

1    detention.  Whatever the wisdom of that decision, it's a

2    decision I have to abide by.

3          In light of that presumption lying with Mr. Harcevic

4    in this case, I am not satisfied -- not yet satisfied -- that

5    I can set conditions that would adequately assure that

6    Mr. Harcevic appears in St. Louis in federal court for his

7    case, and those are -- on the basis of the risk of flight

8    particularly that I am not yet satisfied.

9          I should also note that given the nature of the crimes

10   that are alleged here, I respectfully disagree with defense

11   counsel.  I do think the seriousness of the crime here is

12   sufficient.

13         So on that basis, I'm going to order Mr. Harcevic

14   detained, and remanded to the Eastern District of Missouri to

15   face these charges.

16         Having said that, having said that, at this point

17   I don't have any information whatsoever about property or

18   resources.  I have some good citizens of this community who are

19   willing to step forward, and I appreciate that, but I need more

20   information.

21         So what I would propose to do is this.  I'm going to

22   order Mr. Harcevic detained, but I'm willing to set this for a

23   further hearing, a reconsideration of my detention order, to

24   allow Mr. Archer and to allow Pretrial Services to vet what

25   resources might be brought to bear, what cash assets, what real

1    estate assets and other assets might be presented to this

2    court.

3         Because I suspect that will take some time to marshal,

4    unless counsel has a strong objection, my proposal would be to

5    set this for a further hearing not next week, but early the

6    week after, to give everyone some time to figure this out.

7    I appreciate this may impose upon our colleagues in the Eastern

8    District of Missouri, but I think it's important to get this

9    right.

10        So I would propose something like Monday or Tuesday of

11   the week after.  Ms. Rosen, Mr. Archer, would that work for

12   you?

13        **MS. ROSEN:**  So we're talking about the 23rd or 24th,

14   your Honor?

15        **THE COURT:**  We are.  We are.

16        **MS. ROSEN:**  The 24th?

17        **MR. ARCHER:**  Your Honor, the 24th is much better for

18   me.

19        **THE COURT:**  All right, Mr. Rivera, can you confirm the

20   Court's availability?

21        **THE CLERK:**  Yes, your Honor, Tuesday, February 24th at

22   1:30, your Honor's available.

23        **THE COURT:**  All right, and just to be clear, Officer

24   Walton, I am most interested and appreciative in this matter if

25   Pretrial Services can meet with any proposed sureties and also

1    evaluate whether any property that might be tendered and

2    identified to Mr. Archer is suitable as a bond in this

3    matter -- as security for a bond in this matter.

4         **PRETRIAL SERVICES OFFICER:**  Yes, your Honor.

5         **THE COURT:**  All right.  And I appreciate your

6    assistance on this.

7         **MS. ROSEN:**  So your Honor, I take it you're then --

8    you're deferring your order of removal.

9         **THE COURT:**  You anticipated my very next step.  Yes.

10   So I am ordering the defendant detained, but I am not yet

11   ordering him removed.  We're going to keep Mr. Harcevic here in

12   Santa Clara County until next Tuesday, that is, a week from

13   Tuesday.  At that time I'll consider whether any sureties can

14   be presented, and depending on my decision, he'll either be

15   released here or returned to St. Louis that day, but we're not

16   going to delay it any further beyond that.

17        **MR. ARCHER:**  Thank you, your Honor.

18        **THE COURT:**  All right, does everybody understand how

19   we're going to proceed?

20        **MS. ROSEN:**  Yes, your Honor, thank you.

21        **THE COURT:**  All right, Mr. Harcevic, have you been

22   able to follow and understand everything I'm saying here, sir?

23        **THE DEFENDANT:**  Yes.

24        **THE COURT:**  All right, sir, then I am returning you to

25   the custody of the marshals.  You're going to be taken back to

1   the main jail this afternoon, but on Tuesday the 23rd --

2   24th of February, at 1:30, you're going to return to this very

3   same courtroom, sir.  I'll consider the issue further at that

4   time.  I suggest when you next meet with your attorney, you ask

5   him any questions you may have.

6           Mr. Rivera, do you need to consult with me?

7           Mr. Rivera points out that at this point, the issue of

8   findings has not been addressed.

9           Mr. Archer, are you prepared to waive findings at this

10  point?

11          **MR. ARCHER:**  Yes, your Honor, perhaps with the -- for

12  the moment, I'm (inaudible) the hearing.

13          **THE COURT:**  All right, all right.

14          **MR. ARCHER:**  If that makes sense.

15          **THE COURT:**  Well, I will note for purposes of our

16  record today that the findings are waived.  I will note,

17  however, if my reconsideration is -- if your motion for

18  reconsideration, which I take it you're making --

19          **MR. ARCHER:**  I'm now making, your Honor.

20          **THE COURT:**  -- all right -- is denied on Tuesday the

21  24th, I will revisit the issue of findings and invite you to

22  request them, and if necessary, I'll draft them at that point.

23          **MR. ARCHER:**  Thank you, your Honor.

24          **THE COURT:**  Does that make sense?  Okay.  All right,

25  we'll see you back here on the 24th.  Have a good afternoon,

1    sir.

2           MS. ROSEN:  Thank you.

3                                                    2:19 p.m.

4                        ---o0o---

**CERTIFICATE OF TRANSCRIBER**

     I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____ 03/23/2015

    Signature of Transcriber          Date