**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 4:15-CR-0049 CDP- DDN |
| vs. | |
| RAMIZ ZIJAD HODZIC, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARMIN HARCEVIC'S MOTION TO DISMISS COUNTS I AND III OF THE INDICTMENT PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(B)** |
| a/k/a Siki Ramiz Hodzic | |
| SEDINA UNKIC HODZIC, | |
| NIHAD ROSIC, | |
| a/k/a Yahya Abu Ayesha Mudzahid, | |
| MEDIHA MEDY SALKICEVIC, | |
| a/k/a Medy Ummuluna, | |
| a/k/a Bosna Mexico, | |
| ARMIN HARCEVIC, and | |
| JASMINKA RAMIC. | |
| Defendants. | |

<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HARCEVIC'S MOTION TO DISMISS COUNTS I AND III</u>

<u>FACTUAL ALLEGATIONS IN THE INDICTMENT</u>

Mr. Harcevic is charged, along with defendants Siki Ramiz Hodzic (Siki Hodzic), Sedina Unkic Hodzic, Mediha Medy Salkicevic, Jasminka Ramic, and Nihad Rosic with conspiracy to provide material support in Count I and material support of terrorism in Count III, both in violation of 18 U.S.C. § 2339A(a). Section 2339A(a) provides, in relevant part, that:

> Whoever *provides material support or resources* or conceals or disguises the nature, location, source, or ownership of material support or resources, *knowing or intending that they are to be used*

1

in preparation for, or in carrying out, a violation of section…
956,…of this title…*or conspires to do such an act*…shall be fined
under this title, imprisoned not more than 15 years, or both….
(emphasis added)

The relevant elements of § 2339A(a) are alleged in Paragraph 2 of Count I and Count III of the

Indictment.

The underlying offense which Mr. Harcevic and the other defendants are charged with

supporting is a conspiracy to murder or maim overseas in violation of 18 U.S.C. § 956(a)(1). The

conspiracy to murder or maim overseas is charged in Count II of the Indictment against

Defendants Siki Hodzic and Nihad Rosic, along with Abdullah Ramo Pazara (Pazara) who is

named but not indicted.[1] Section 956(a)(1) prohibits a conspiracy *to commit at any place outside*

*the United States an act that would constitute the offense of murder, kidnapping, or maiming if*

*committed in the special maritime and territorial jurisdiction of the United States.* (emphasis

added)

The factual allegations supporting all charges in the Indictment are contained within the

manner and means section of Count I.  These allegations allege that Pazara facilitated the

conspiracy to murder by:

- "Travelling to Syria, Iraq, and elsewhere to support the designated FTOs[2] and act
  as [a] foreign fighter by participating in the ongoing conflict and otherwise
  engaging in acts of violence, to including killing and maiming persons." (Count I.
  A. 4.)

---

[1] Pazara is believed to have been killed in combat in Syria.
[2] FTOs refers to Foreign Terrorist Organization and for the purpose of the Indictment refers to al-Qa'ida in Iraq, which the Indictment alleges has also been known by the aliases: al-Nusrah Front, Jabhat al-Nusrah, Jabhet al-Nusra, Islamic State of Iraq and the Levant the Islamic State of Iraq and al-Sham, and the Islamic State of Iraq and Syria.

Nihad Rosie facilitated both the conspiracies to materially support terrorism and commit murder abroad by:

- "On or about July 20, 2014, attempt[ing] to board Norwegian at J.F.K. International Airport intending to travel to Syria to join Pazara and others known who were fighting in Syria, Iraq, and elsewhere and in support of the designated FTOs." (Count I. A. 45.)

Siki Hodzic facilitated both the conspiracies to materially support terrorism and commit murder abroad by:

- Telling Nihad Rosie prior to his attempted departure that" if he went to Syria he did not need to buy uniforms, boots, belt, jacket, or shirts because [Defendant Siki Hodzic] had everything ready for him." (Count I. A. 42.)

- Telling Nihad Rosie "to get a night vision optic with a built-in camera for $540.00" so that "when Defendant Nihad Rosie killed a person, he could record it." (Count I. A. 42.)

- Providing his personal funds to Pazara with the intent that the funds "be transferred to and used in support of Abdullah Ramo Pazara and others… who were fighting in Syria, Iraq and elsewhere in support of the designated FTOs." (Count I. A. 6.)

- Purchasing and providing  military equipment including "military uniforms, tactical combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment and range finders, rifle scopes, equipment, and supplies" with the intent that they would be used to support Pazara and other fighting in who were fighting in Syria, Iraq and elsewhere in support of the designated FTOs.  (Count I. A. 7.)

- "Seeking out and identifying supporters… and…soliciting money from said individuals, and coordinating the receipt of money intending the money to be transferred to, and used in support of…Pazara, and others…who were fighting in Syria, Iraq, and elsewhere in support of designated FTO's." (Count I. A. 5.)

- Communicating to other members of the alleged conspiracy to support terrorism concerning the status of…Pazara and other foreign fighters who were supporting the designated FTOs. (Count I. A. 12, 13, 14, 15.)

The Government alleges Mr. Harcevic violated 18 U.S.C. 2339A(a) because he agreed to support a conspiracy to commit murder abroad (Count I) and thereafter supported a conspiracy to commit murder abroad by transferring $1,500 on or about September 24, 2013 to Siki Hodzic (Count III).[3] With respect to both Counts I and III, Mr. Harcevic is alleged to have had the following knowledge and/or intent with regards to his actions:

- The  knowledge that "Pazara and others would receive the funds;"

- The knowledge that Pazara and others were "fighting in Syria, Iraq and elsewhere" and engaged in "violent activities overseas, including conspiring to murder and maim persons;" and

- The knowledge and intent that the funds would be used to support said individuals who were fighting with, and in support of the designated FTOs.

With regards to the specifics of the "fighting" that Pazara and others are alleged to have engaged in Syria, Iraq, and elsewhere, the Indictment alleges:

- Pazara told an unknown individual that he "had just returned from a mission where they captured a large area, killed eleven individuals, captured one, and added that they intended to slaughter the prisoner the follow[ing] day; (Count I. A. 39.)

- Siki Hodzic communicated that he "watched a video where Abdullah Ramo Pazara's group fought through 200 kilometers, captured trenches, checkpoints, and houses and then fled;" (Count I. A. 40.)

- Siki Hodzic told Nihad Rosie that "five good snipers could do wonders there" (Syria); (Count I. A. 40.)

---

[3] Unlike a conspiracy charged under 18 U.S.C. § 371, a conspiracy to support material support to terrorism in violation of 18 U.S.C. § 2339A(a) does not require an overt act in furtherance and is complete upon an agreement. proof of the commission of an overt act in a § 2339A conspiracy is not required by statute. See 18 U.S.C. § 2339A; see also United States v. Hassan, 742 F.3d 104, 140, (4th Cir. N.C. 2014). Accordingly, the Government may charge the agreement and any act of furtherance as separate charges.

- Siki Hodzic communicated he watched "a video of 'ours' in trenches and in warfare; that 'ours' downed five and slaughtered them;" (Count I. A. 40.) and

- Siki Hodzic communicated that he "watched the Sharia punishment of a beheading." (Count I. A. 40.)

<u>SUMMARY OF THE ARGUMENT</u>

Mr. Harcevic argues that Counts I and III should be dismissed because the factual averments in the Indictment fail to state the specific intent necessary for a violation of § 2339A(a). Read in the light most favorable to the Government, Harcevic agreed to provide his personal funds to Siki Hodzic with (1) the knowledge that "Pazara and others would receive the funds," (2) the knowledge that Pazara and others were "fighting in Syria, Iraq and elsewhere," including "conspiring to murder and maim persons," and (3) the knowledge and intent that the funds would be used to support Pazara and others.

Mr. Harcevic argues that the above allegations regarding his intent are insufficient to support the specific intent requirement of § 2339A(a). The plain language, legislative history, commentary, and universal interpretation by considering courts of § 2339A(a) all require that the Government plead and prove that the defendant had the specific intent to materially support one of the enumerated crimes in § 2339A(a). Instead of alleging that Mr. Harcevic intended to support the conspiracy to murder and maim abroad, one of the crimes enumerated in § 2339A(a), the Indictment only alleges that he intended to support Pazara, one of the alleged conspirators. While the general intent to support an individual or organization would be sufficient to charge a violation of 18 U.S.C. § 2339B (material support of a terrorist organization), it is insufficient to charge a violation under § 2339A(a), which requires the specific intent to support the enumerated crime. Accordingly, the Indictment fails to allege an offense under § 2339A because the

supporting facts regarding intent are insufficient to meet the specific intent requirement of § 2339A(a).

Alternatively and additionally, Mr. Harcevic argues that the Indictment's failure to define the term "fighting" in relationship to the conspiracy to murder and maim abroad leaves open the possibility that the Grand Jury relied on actions that do not constitute murder under § 956(a)(1). Specifically, Mr. Harcevic argues that the term "fighting" in the Indictment refers generically to armed conflict. Absent special circumstance, the killing of one combatant by another in armed conflict does not include murder. Without more specific allegations about the alleged "fighting," it cannot be ascertained whether the basis of the Grand Jury's decision was an agreement to conduct lawful killing incident to armed conflict or to murder.

<u>STANDARD OF REVIEW</u>

An indictment serves two main purposes: "(1) to provide the defendant with a description of the charges against him to enable him to prepare a defense and to plead his conviction or acquittal for protection against further prosecution for the same charges and (2) to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction." *United States v. Stone*, 2011 U.S. Dist. LEXIS 144324, *7 ( E.D. Mich. Dec. 15, 2011) (citing *Reeder v. United States*, 262 F. 36, 38 (8th Cir. 1919)).  Therefore, a valid indictment will allow a defendant to do two things: (1) prepare a defense and (2) plead double jeopardy to a subsequent prosecution.  *United States v. Mallen*, 843 F.2d 1096, 1103 (8th Cir. 1988).  The indictment must contain factual allegations, not merely conclusions of law. *Stone*, 2011 U.S. Dist. LEXIS 144324, *7. In reviewing a motion to dismiss, the Court should take as true the specific factual allegations of the indictment.  *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n. 16 (1952).

6

Rule 12(b) of the Federal Rules of Criminal Procedure provides in relevant part that "[a]ny defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by motion. This includes a motion to dismiss an indictment for a failure to state an offense. Fed. R. Crim. P. 12(b)(2).  Courts have routinely held that, while it is often sufficient for an indictment to track the language of the statute, "[f]or purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 227 F.3d 678, 685 (3d Cir. 2000). *See also United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003); *United States v. Murillo*, 2008 U.S. Dist. LEXIS 19568, *4 (N.D. Iowa Mar. 13, 2008).  In other words, "the indictment must include all of the elements of the crime alleged, ... as well as specific facts that satisfy all those elements; a recitation 'in general terms of the essential elements of the offense' is not sufficient." *United States v. Wecht*, 2006 U.S. Dist. LEXIS 44842, *3 (W.D. Pa. June 29, 2006) (citing *Panarella*, 227 F.3d at 684-85).  To ensure that the specific facts alleged in the indictment are sufficient to constitute the crime charged, a "district court may review the facts in the indictment to see whether, as a matter of law, they reflect a proper interpretation of criminal activity under the relevant criminal statute." *Id.* Thus, "[t]he constitutionality of a statute as well as its correct interpretation can be raised in a motion to dismiss." *United States v. Islamic Am. Relief Agency*, 2009 U.S. Dist. LEXIS 106021, *4 (W.D. Mo. Nov. 13, 2009). Accordingly, the specific facts alleged in the Indictment must be scrutinized to determine whether they meet constitutional and statutory standards.  In this case, such scrutiny reveals that the Indictment is fatally deficient.

ARGUMENT

I.    Counts I and III fail to allege the required specific intent to aid a terrorist act

Mr. Harcevic submits Counts I and III must be dismissed because the Indictment charges him with a violation of §2339A(a), but instead of alleging the required specific intent, the Indictment erroneously alleges only the general intent requirements of §2339B.

   A.  Courts have universally interpreted §2339A(a) to require a specific intent to aid a terrorist act

Section 2339A(a) requires that a defendant specifically intend or actually know that the material support he provides *will be used* for a specific violent offense (in this case, conspiracy to murder or maim overseas).  *See* 18 U.S.C. 2339A(a).[4]  The Second Circuit has held that section 2339A "requires . . . that the defendant provide support or resources *with the knowledge or intent* that such resources be used to commit specific violent crimes." *United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009) (emphasis in original).  Other courts that have considered the question have agreed with the Second Circuit's interpretation. *See United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007) ("To meet its burden under § 2339A, the Government must at least prove that the defendants provided material support or resources *knowing that they be used in preparation for* the" violent offense.) (emphasis in original); *Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1133 (9th Cir. 2007) *overruled on other grounds by Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ("Congress could have, but chose not to, impose a requirement [in section 2339B] that the defendant act with the specific intent to further the

---

[4] Although Section 2339A is entitled "Providing material support to terrorists," the "title of a statute '[is] of use *only* when [it] sheds light on some ambiguous word or phrase' in the statute itself." *Carter v. United States*, 530 U.S. 255, 267 (2000) (quoting *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998)) (emphasis added). It goes without saying that the list of specific statutory references in Section 2339A(a) is not ambiguous.

terrorist activity of the organization, a requirement *clearly set forth in section[] 2339A . . .* but left out of section 2339B.") (emphasis added); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1058 (S.D. Ohio 2007) ("§ 2339A was limited to individuals (such as donors) who intended to further the commission of specific federal offenses"); *see also United States v. Chandia*, 514 F.3d 365, 372 (4th Cir. 2008) (noting that "[t]he elements of the separate crimes charged under § 2339A and § 2339B do not overlap").

The Indictment fails the specific intent requirement because, with the exception of the general terms alleging a violation in Paragraphs 2 of Counts I and III, the Indictment does not allege that Mr. Harcevic knew that his money would be used in support of a conspiracy to murder and maim overseas in violation of 18 U.S.C. § 956. The general allegation, however, is insufficient to state an offense and must be supported with sufficient factual allegations to demonstrate a violation. *See Panarella*, 227 F.3d at 685.

The factual allegations supporting Counts I and III allege Mr. Harcevic intended his funds to be used for the support of Pazara with the knowledge that Pazara was fighting in Syria, Iraq, and elsewhere. The Indictment's factual allegations substitute the intent or knowledge that funds would be used to support a conspiracy with an allegation that Mr. Harcevic supported an alleged conspirator with the implied knowledge that the funds could be used to further the conspiracy.

The knowledge or intent to support a conspirator is not the same thing as supporting a conspiracy because this is only one possibility. Another possibility is that Pazara used the funds to provide food and medicine to the local population, or spent the money on wine, women, and song, all things that combatants have been known to do in the combat zone, but which would not

constitute a conspiracy to commit murder. Indeed, this was the precise reason that Congress passed §2339B.

    B.   The history of §2339A and §2339B makes clear that Harcevic may not be charged with a violation of 2339A(a) based on the knowledge that he is contributing funds to an individual who is engaged or intends to engage in murder abroad

In order to understand the significance of the intent requirements of § 2339A(a), it is important to understand the history of both "material support" statutes (18 U.S.C. § 2339A(a) and 18 U.S.C. § 2339B). Congress passed the first material support statute (now § 2339A(a)) in 1994 in response to the World Trade Center bombing on February 26, 1993. 18 U.S.C. § 2339A(b) (1994 ed.); *see also* Andrew Peterson, *Addressing Tomorrow's Terrorists*, 2 J. Nat'l Security L. & Pol'y 297, 316 (2008) [hereinafter Peterson].

Section 2339A, both in its original and current form, however was judged to be a limited tool in combatting terrorism because of its exacting "specific intent" requirement that makes "it very difficult to prosecute those who provide fungible assets." Peterson, at 348. Under § 2339A, "[a] person could donate thousands of dollars to Hamas or Hezbollah, for example, so long as he or she thought the money might be spent on the political or social services those groups provided." Robert M. Chesney, *The Sleeper Scenario: Terrorism-support Laws and the Demands of Prevention*, 42 Harv. J. on Legis. 1, 26-30 (2005).  Section 2339A, then, left a "gap" in antiterrorism law. *See, e.g.*, Andrew Peterson, *Addressing Tomorrow's Terrorists*, 2 J. Nat'l Security L. & Pol'y 297, 323 (2008) (listing "a high scienter requirement and a specific nexus requirement" as "two things that limited 2339A"); *id.* at 348 ("2339A's specific intent requirement makes it very difficult to prosecute those who provide fungible assets."); Major Dana M. Hollywood, *Redemption Deferred: Military Commissions in the War on Terror and the Charge of Providing Material Support for Terrorism*, 36 Hastings Int'l & Comp. L. Rev.

1, 76 (2013) ("[S]ection 2339A includes a specific intent element"). Antiterrorism experts, in particular, have acknowledged the "limited" scope of section 2339A. *See, e.g.*, Robert M. Chesney, *The Sleeper Scenario: Terrorism-support Laws and the Demands of Prevention*, 42 Harv. J. on Legis. 1, 26-30 (2005), *available at*

http://works.bepress.com/cgi/viewcontent.cgi?article=1004&context=robert_chesney.  The staff of the 9/11 Commission observed that, under § 2339A, "prosecuting a financial supporter of terrorism required tracing donor funds to a particular act of terrorism—a practical impossibility." Staff of National Commission on Terrorist Attacks Upon the United States, Monograph on Terrorist Financing 31–32 (2004), *available at* http://www.9-11commission.gov /staff_statements/911_TerrFin_Monograph.pdf. As Jeff Breinholt, Deputy Chief of the Counterterrorism Section at the U.S. Department of Justice under President George W. Bush, explained, § 2339A has an "exacting intent requirement." Jeff Breinholt, *Counterterrorism Enforcement: A Lawyer's Guide*, Office of Legal Education, Executive Office for United States Attorneys 272, 285–86 (2004), *available at*

http://www.americanbar.org/content/dam/aba/migrated/2011_build/law_national_security/breinh olt_counterterrorism_enforcement.authcheckdam.pdf.

In order to fill the gap left by § 2339A, Congress passed § 2339B as part of the Antiterrorism and Effective Death Penalty Act of 1995.  *See* H.R. Rep. No. 104-383, at 43 (1995).  In contrast to § 2339A, § 2339B prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization" regardless of whether or not the support is intended to support the terrorist organization's illegal activities. 18 U.S.C. § 2339B(a)(1) (1996 ed.).  The Act defines a "terrorist organization" as "an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act."  18 U.S.C. § 2339B(g)(6) (1996 ed.).

11

"The primary difference between §§ 2339A and 2339B is that § 2339A requires proof of a specific intention to assist in the violation of another anti-terrorism statute, whereas § 2339B does not require such a specific intent." Robert M. Twiss, *National Security: The Impact on U.S. Foreign Policy Arising from Private Actions Initiated Against Foreign Nations from within the United States*, 3 Creighton Int'l & Comp. L.J. 47, 77 (2012).  In other words, while "section 2339A was limited to donors intending to further the commission of specific federal offenses, Congress passed section 2339B to encompass donors who acted without the intent to further federal crimes." *United States v. Assi*, 414 F. Supp. 2d 707, 722 (E.D. Mich. 2006).

Applying the history to the present case, Mr. Harcevic's conduct, as alleged in the Indictment, of agreeing to and then supplying $1,500 to Pazara without a specified use, and without the requisite intent, is precisely what the commentators on § 2339A(a) described as being insufficient to constitute a criminal charge under that section. Indeed if a defendant could have been charged under  § 2339A(a) for giving support to a person or organization that he or she knew was engaged in a criminal act, as Mr. Harcevic is here, there would have been no need to enact § 2339B. For instance, the example used by Peterson, wherein a person donated to Hamas, would not actually pose a problem because it was universally known that Hamas was engaged in fighting against Israel in a similar manner as Pazara. Under the Government's theory, the person in this example could have been charged with a violation of § 2339A(a) based on the fact that he, similar to Harcevic, knew that Hamas was engaged in combat. The Government's reliance in this case on a theory that was argued by members of the Executive Branch to be insufficient to constitute a crime under §2339A(a) at best does not reflect Congress's understanding and intent regarding the limitations of §2339A(a), and at worst is disingenuous.

    C.  Permitting a charge of §2339A(a) without specific intent raises serious constitutional questions

Permitting Mr. Harcevic to be tried on the general intent allegation that he intended to give support to Pazara with the knowledge that Pazara and others were fighting in Syria, Iraq and elsewhere under §2339A(a) not only violates the plain language and congressional intent of the statute, it also raises serious constitutional questions.

In the landmark case *Humanitarian Law*, the Supreme Court held that the language in 2339B lawfully permitted prosecution of an individual who provided support to a terrorist organization even if the individual intended the support to be used for purely lawful purposes because the support was fungible.  *See Humanitarian Law Project*, 561 U.S. at 31. The Court, however, limited the fungible theory to section 2339B, because, as the Supreme Court implied, applying the fungible theory to section 2339A(a) would have dangerous and unconstitutional consequences**.**  In response to the dissent's argument that permitting prosecution of aid given with lawful intent under a fungible theory created vagueness problem as "there is 'no natural stopping place' for the proposition, the majority responded that there *is* such a "natural stopping place" under § 2339B. "The statute reaches only material support when coordinated with or under the direction of a designated foreign terrorist organization." *Id.* This "natural stopping point" for the fungible theory simply does not exist under § 2339A(a). Unlike §2339B, there is no requirement that the Secretary of State designate individuals as an FTO.

 If the fungible theory applies to § 2339A(a), a reasonable person would not know whether or not his conduct is permitted.  Under the Government's theory, § 2339A(a), despite its plain language, forbids providing material support to organizations or individuals that one knows are engaged in certain illegal activities, even if one does not intend or know that the support will be used for those illegal activities, as long as the support frees up resources for the illegal

activities.  If this interpretation of § 2339A(a) were correct, it would be unclear to a person of ordinary intelligence what conduct is actually forbidden.  For instance, suppose someone gives money to an overseas fighter intending for the overseas fighter to spend the money on food (or even self-defense), believing that the money will be so used.  The plain language of § 2339A(a) does not prohibit this conduct, yet this conduct is entirely consistent with the specific allegations against Mr. Harcevic in the Indictment.

The Government's interpretation of § 2339A(a) would also encourage arbitrary enforcement of the statute.  A statute encourages arbitrary enforcement when it fails "to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Kolender v. Lawson*, 461 U.S. 352, 362 (1983). Although section 2339A(a) is not "standard less" as written, the Indictment's rewrite, which effectively removes the statute's specific intent requirement, has no limiting principle.  *C.f. Humanitarian Law*, 561 U.S. at 31 (noting that section 2339B has a "natural stopping place," because it "reaches only material support coordinated with or under the direction of a designated foreign terrorist organization"); *Awan*, 459 F.Supp.2d at 179 (finding section 2339A(a) not "vague-as-applied" but *only* because the statute "raise[d] the scienter requirement" from section 2339B and required "specific intent" to support a "specific crime.").

Any Syrian rebel resisting the Bashur Al-Assad regime is "fighting" and therefore presumably engaged in "murder and maiming." This leads to the absurd conclusion that a person or organization knowingly giving humanitarian aid to rebel soldiers that the United States is training for battle against the Syrian government is guilty of providing material support for terrorist acts.[5] *See* Mark Landler & Michael R. Gordon, *U.S. Offers Training and Other Aid to*

---

[5] Around the time Harcevic is alleged to have given money to Pazara, several nonprofits and the U.S. Government gave or desired to give material support in the form of humanitarian aid to rebel fighters.  *See, e.g.*, *id.*; *see also* Michael R. Gordon, *U.S. Steps Up Aid to Syrian*

*Syrian Rebels*, Feb. 27, 2013, http://www.nytimes.com/2013/02/28/world/middleeast/us-expands-aid-to-syrian-rebels.html.

The Government cannot distinguish this case by arguing that the rebels supported by the Government and independent nonprofits are different from the rebels supported by Harcevic. Under the Government's theory, all of the Syrian rebels are engaged in "murder and maiming" abroad. *See* 18 U.S.C. 956(a); 18 U.S.C. 1111.  The United States has been funneling humanitarian aid to the Syrian rebels through nonprofit organizations at least since 2012, and mainstream nonprofits have aided the Syrian rebels independently.  One might be forgiven for assuming that this activity is not a violation of federal law.  If the fungible theory applies to § 2339A(a), there is no question that the statute encourages arbitrary enforcement and, further, that this case is an example of such arbitrary enforcement. None of these, of course, is a problem if Mr. Harcevic were charged under §2339B for material support of a terrorist organization, but he is not. Despite the fact that the Indictment repeatedly refers to a terrorist organization, he is not charged with that. Accordingly, Counts I and III of the Indictment against Mr. Harcevic should be dismissed.

---

*Opposition, Pledging $60 Million*, N.Y. Times, Feb. 28, 2013, http://www.nytimes.com/2013/03/01/world/middleeast/us-pledges-60-million-to-0syrian-opposition.html (noting that the United States would provide humanitarian aid to the Free Syrian Army); David D. Kirkpatrick, *In Parts of Syria, Lack of Assistance 'Is a Catastrophe'*, N.Y. Times, Mar. 8, 2013, http://www.nytimes.com/2013/03/09/world/middleeast/in-syrias-rebel-strongholds-foreign-aid-yields-anger.html ("Washington is funneling about $60 million — about $10 million in 2012, and about $50 million in 2013 — through independent nonprofit groups to deliver flour, food baskets, blankets and medicine to the most stable opposition-controlled territory"); Samina Haq, *How Islamic Relief is Working Across Syria's Borders*, Humanitarian Exchange Magazine (Nov. 2013), http://www.odihpn.org/ humanitarian-exchange-magazine/issue-59/how-islamic-relief-is-working-across-syrias-borders (noting that "Islamic Relief attempts to work in both opposition- and government- held areas" and that "[b]oth the government and opposition groups must help to ensure that aid reaches those most in need."). Under the Government's theory, there is no serious question that these gifts freed up resources for Syrian rebels to commit "murder and maiming abroad."[5]  *See* 18 U.S.C. 956(a); 18 U.S.C. 1111.

II.     The Indictment Fails to Allege Sufficient Facts in Order for Mr. Harcevic to Defend
        Against the Conspiracy to Commit Murder Abroad that He is Alleged to Have Conspired
        to Materially Support and Have Materially Supported in Counts I and III.

In addition to failing to allege the specific intent to support a conspiracy to commit

murder and maiming necessary for a violation of 2339(A)(1), the Indictment is deficient in

failing to sufficiently provide notice concerning the underlying conspiracy to commit murder and

maiming.

The Indictment fails to fulfill the requirement of notice to Mr. Harcevic of the allegations

against which he must defend because it does not give him sufficient notice of the underlying

conspiracy to violate 18 U.S.C. § 956(a)(1).

The term "murders" within 18 U.S.C. § 956(a)(1) has been interpreted as having the

meaning of murder provided in18 U.S.C. § 1111. *See United States v. Awan*, 459 F. Supp. 2d

167, 175-176 (E.D.N.Y. 2006).   Murder is defined in Section 1111 as "the unlawful killing of a

human being with malice aforethought."

The underlying conspiracy to kill persons in a foreign country for which Mr. Harcevic

and the other Defendants are alleged to have conspired to materially support and have materially

supported is alleged in Count II of the Indictment and concerns the agreement by Paraza and

others to fight in Syria, Iraq and elsewhere supported by the overt act of Pazara's travel to

Southwest Asia.

Neither the term' fighting' nor 'fought', however, is necessarily synonymous with

murder. The indictment does not define the term fighting.  The Webster definition of fight

includes "to struggle in battle or physical combat."  In the context of the Indictment, Mr.

Harcevic understands the term fighting to refer to armed combat. Although belligerents can,

16

under certain circumstances, commit murder when they kill a member of the opposing force, typically the killing of hostile forces is not murder. See 2 LaFave Substantive Criminal Law § 10.2 ("if a soldier kills an enemy combatant during time of war and within the rules of warfare, he is not guilty of murder," whereas, for example a soldier intentionally kills a prisoner – a violation of the laws of war – then he commits murder").[6] The generic term fighting without more specificity, or more appropriately as applied to the Indictment, the term combat, necessarily includes the potential that the Grand Jury indicted Mr. Harcevic for materially supporting actions which would not constitute  murder as criminalized by 18 USC § 1111.

Where a Grand Jury's basis for finding that a conspiracy to commit murder includes undefined alternative theories of prosecution, the Indictment fails to provide sufficient notice and must be dismissed without prejudice. *See Awan*, 459 F. Supp. 2d at  175-176 (dismissing the alleged conspiracy to commit murder abroad and related material support counts without prejudice because  the Indictment failed to make the necessary specific allegations concerning the alleged murder to determine the theory of prosecution under 18 U.S.C. § 1111.)  As the Court noted in *Awan*, this failure cannot be cured through a bill of particulars "since those filings will not reveal what the grand jury found…." *Awan*, 459 F. Supp. 2d at 176, n 7.

In Mr. Harcevic's case, the deficiency in specificity is likewise not cured by specific allegations concerning the conspiracy to commit murder. None of these allegations cure the potential that the term 'fighting' used by the grand jury in their Indictment encompassed lawful combat. Like the term fighting or armed conflict, the specific communications alleged included

---

[6] Apart from the above example, the United States has previously maintained that belligerents who do not comply with the rules of warfare in their conduct of battle are similarly liable for murder. *See United States v. Irek Ilgiz Hamidullin*, 2015 U.S. Dist. LEXIS 91387 (E.D. Va. July 13, 2015).

descriptions of conduct that is consistent with and conducted in accordance with the law of war (e.g. the use of snipers, wearing of uniforms, conduct of military operations to acquire control of territory, and the killing of opposing belligerents, etc.).  The communications also reference the killing of prisoners, which is not in accordance with the law of war.  Taken as a whole, however, it is impossible to discern whether what the Grand Jury indicted was material support of a conspiracy to murder prisoners or simply a conspiracy to engage in armed conflict.

Likewise, the allegation that the fighting was in support of designated FTOs does not delineate a conspiracy to murder.  First, supporting a common goal of a terrorist organization is in and of itself not criminalized. See *Humanitarian Law* 561 U.S. at ¬36 (stating that "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups.")  In order to commit a crime, an individual must do more than support an FTO's objectives; they must provide that support coordinated with or under the direction and control of the FTO.   Here, the Indictment does not allege that Pazara and others' alleged conspiracy to fight was under the direction and control of an FTO. Nor does the factual allegation that Pazara told an unknown person "most of a FTO which he identified had joined another FTO and they were making progress, with the Islamic State spreading every day" delineate he is acting under control of an FTO.  Read in the light most favorable to the government, this allegation is at most the reporting of facts occurring on the ground and does not amount to operating under control any more than a battle field reporter.

Finally, even if the phrase "supporting FTOs" was read to indicate Pazara was acting under the control of an FTO or FTOs, it would not necessarily mean that his combat activities were unprivileged and liable for prosecution of murder. Whether or not combat activities are privileged is dependent on whether the combatants generally conduct their operations in

18

accordance with the law of war.  See *United States v. Yunis*, 924 F.2d 1086, 1097, (D.C. Cir. 1991). FTO designation has no bearing on this question.  Indeed, an organization can be both a designated FTO and a privileged belligerent.  See Military Commissions proceedings in *United States v. Hamdan* ("finding that the Ansars, a military group of foreign fighters fighting in Afghanistan in support of Osama bin Laden and the Taliban, met the definition required for POW protection and combatant immunity under the Third Geneva Convention for Protection as a Prisoner of War, as they were "members of the armed forces of a Party," or members of a militia or volunteer corps "forming part of such armed forces." See pages 3and 7 of opinion found at http://www.mc.mil/Portals/0/pdfs/Hamdan/Hamdan%20(AE084).pdf.)

Mr. Harcevic separately maintains that Pazara's agreement to participate in combat complied with the laws of war, and does not constitute a conspiracy to commit murder; therefore, he is immune from prosecution based on materially supporting Pazara with the knowledge that he was engaged in combat.[7] The Indictment at this point, however, does not put the question of the lawfulness of the alleged belligerency before the Court for two reasons.  First, this Court's order seeks the submission of motions at this point which are limited to those that do not require finding of facts.  The defense of combatant immunity is a mixed question of law and facts generally determined by the Court.  *See Lindh*, 212 F. Supp. 2d 541; *See also Irek Ilgiz Hamidullin*, 2015 U.S. Dist. LEXIS 91387. [8] Accordingly the issue cannot be resolved without

---

[7] "[C]ombatant immunity is a doctrine reflected in the customary international law of war. It forbids prosecution of soldiers for their lawful belligerent acts committed during the course of armed conflicts against legitimate military targets." *United States v. Lindh*, 212 F. Supp. 2d 541, 553 (E.D. Va. 2002)

[8] While both the defendants in *Lindh* and *Hamidullin* were found not to be protected by combatant immunity based on their individual circumstances, the facts here are much stronger for lawful belligerency on the part of Pazara and others who were fighting with him. Unlike those defendants the allegations make clear that the intent of Pazara and his co-belligerents was to fight in uniform, a key fact that was missing in both of the earlier cases.

19

fact finding which in turn requires the defense to a complete review of discovery and to conduct investigation into the circumstances of Pazara's combatant activities.

Second, and more importantly at this point, the failure of the Indictment to specify sufficient facts concerning the conspiracy to commit murder does not put Mr. Harcevic on notice of the underlying offense; therefore, it does not provide notice of the potential for a defense of combatant immunity to the alleged conspiracy to commit murder abroad.  For instance, the defense of combat immunity would be inapplicable if the alleged conspiracy to murder is later indicted as a conspiracy to murder prisoners, as combat immunity would not shield the killing of prisoners.  Whereas if the agreement were merely to fight as a uniformed force in support of the Syrian rebels defending the Syrian population from armed attack by the forces of President Assad, then the defense would be potentially relevant.

At this point, it is impossible to discern whether this or another theory underlies the alleged conspiracy to commit murder abroad.  Accordingly, the deficiency in the Indictment's failure to specify what would constitute murder abroad, in addition to eliminating the possibility that the Grand jury consider lawful conduct as the basis for the alleged conspiracy to commit murder abroad also failed to provide sufficient notice for Mr. Harcevic to determine the applicability of appropriate defenses.

<u>CONCLUSION</u>

For the reasons stated above Mr. Harcevic respectfully prays that this Honorable Court dismiss Counts I and III.

DATED this 7th day of October, 2015.

20

*/s/ Charles D. Swift*

Charles D. Swift
Pro Hac Attorney for Armin Harcevic
TX State Bar No. 24091964
cswift@clcma.org

*/s/ Catherine McDonald*

Charles D. Swift
Pro Hac Attorney for Armin Harcevic
TX State Bar No. 24091782
cmcdonald@clcma.org

833 – E. Arapaho Rd., Ste. 102
Richardson, TX  75081
Tel: (972) 914-2507
Fax: (972) 692-7454

21

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of defendant Harcevic's Memorandum of Law in Support of Motion to Dismiss was electronically filed  and served on the Court's electronic filing system:

DATED this 7th day of October, 2015.

_____     /s/ Charles D. Swift_____
Charles D. Swift
Pro Hac Attorney for Armin Harcevic
833 – E. Arapaho Rd., Ste. 102
Richardson, TX  75081
Tel: (972) 914-2507
Fax: (972) 692-7454
cswift@clcma.org