UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-CR-0049-CDP (DDN) |
| ) | |
| SEDINA UNKIC HODZIC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT SEDINA HODZIC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### Introduction.

Defendant Sedina Hodzic is charged in Counts I and III of a multi-defendant indictment. Count I charges Hodzic with conspiracy to provide material support or resources, as defined under 18 U.S.C. §2339A(b), with the knowledge or intent that such material support or resources would be used to carry out a violation of 18 U.S.C.§956(a), to wit, a conspiracy to "murder or maim" abroad. Count III charges Hodzic with the substantive act of providing material support or resources, knowing or intending that such material support or resources would be used to carry out a violation of 18 U.S.C. §956(a), all in violation of 18 U.S.C. §2339A(a).

Title 18 U.S.C. §2339A(a) provides, in pertinent part, "Whoever provides material support or resources… knowing or intending that they are to be used in preparation for, or in carrying out" a violation of various enumerated statutes, including 18 U.S.C. §956,

1

or attempts or conspires to do such an act, shall be subject to imprisonment for up to 15 years. Section 2339A(b) defines "material support or resources" broadly to include tangible and intangible property or services, including financial services, monetary instruments, weapons, and expert advice and assistance. Title 18 U.S.C. §956(a) provides in pertinent part, "Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States, an act that would constitute the offense of murder, kidnapping, or maiming" abroad, is subject to various penalties, provided that "any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy."

Count I alleges that beginning in May, 2013, Abdullah Ramo Pazara, a Bosnian native and naturalized U.S. citizen, and others, travelled to Syria, Iraq, and elsewhere to support certain enumerated foreign terrorist organizations ("FTO's")[1], and was assisted by the charged defendants who sent Pazara various resources and supplies . Count I sets out numerous overt acts in furtherance of the conspiracy. Those attributed to Sedina Hodzic include allegations that she solicited money, used her own money, purchased military surplus supplies and tactical gear, shipped military surplus supplies and tactical gear, and transmitted money through Western Union to Pazara (indictment, ¶¶ 5-10). Each of these acts is alleged to have been done "intending that the materials or supplies

---

[1] The FTOs are identified as Al'Qa'ida in Irag, the Islamic State of Iraq and the Levant ("ISIL"), the Islamic State of Iraq and Syria ("ISIS"), and others.

2

be used to support Abdullah Ramo Pazara and others who were fighting in Syria, Iraq and elsewhere and in in support of the designated FTOs."

Thus, while Sedina Hodzic is charged in Counts I and III with conspiracy to provide material support and services, and providing material support and services, with the knowledge and intent that such material support and services would be used to conspire to commit a murder abroad, the indictment alleges only that her acts were done knowing or intending that those acts would be "used in support of" Pazara or others who were *fighting* abroad "in support of the designated FTOs." Nowhere does the indictment allege that Sedina Hodzic provided what she did, knowing or intending that Pazara or others would use those items to kill or maim.

By contrast, Count II – a count charged to Sedina Hodzic's husband Ramiz Zijad Hodzic and to another defendant, Nihad Rosic, but not to Sedina -- charges Ramiz Hodzic and Rosic with conspiracy to commit the offense of murder or maiming abroad. Moreover, every allegation in Count I referencing either knowledge or intent to use the materials to kill or maim, concerned a defendant *not* Sedina Hodzic, such as allegations that Ramiz Hodzic told defendant Nihad Rosic that "five good snipers could do wonders [in Syria]" and that he watched a video of a beheading; and that Ramiz Hodzic suggested to Rosic that he get a night vision optic with a built-in camera so that when he killed a person he could record it (¶¶ 30, 40. 42).

Indeed, the only allegation in Count I which both includes Sedina Hodzic, and mentions murder and maiming, is paragraph 11, which states:

3

> During the time period of the conspiracy, defendants Siki Ramiz Hodzic, Sedina Hodzic, Unkic Hodzic, Mediha Medy Salkicevic, Armin Harcevic, Jasminka Ramic, and Nihad Rosic, knew that Abdullah Ramo Pazara and others known and unknown to the Grand Jury were fighting in Syria, Iraq and elsewhere and that said individuals received materials, money, and supplies provided by the defendants while Abdullah Ramo Pazara and others were engaged in violent activities overseas, including conspiring to murder and maim persons, and further knew and intended that the materials, money, supplies, and property that were provided to said Abdullah Ramo Pazara and others known and unknown would be used to support said individuals who were fighting with, and in support of the designated FTOs.

This allegation, however, charges only that Sedina Hodzic knew that Pazara was conspiring to murder and maim overseas, and that she intended that he use the proffered materials to fight. It does not allege that she knew or intended that the materials would be used by Pazaro to kill or maim, a requirement under 18 U.S.C. §2339A(a).

## Legal Argument.

### I. Counts I and III fail to allege the required specific intent to aid a terrorist act.

Defendant Sedina Hodzic submits that Counts I and III must be dismissed because the indictment charges her with a violation of §2339A(a), but instead of alleging the required specific intent, it alleges only the general intent requirements of §2339B.

### A. Courts have universally interpreted §2339A(a) to require a specific intent to aid a terrorist act.

18 U.S.C. §2339A(a) requires that a defendant specifically intend or actually know that the material support she provides *will be used* for a specific violent offense (in this case, conspiracy to murder or maim overseas).  See 18 U.S.C. 2339A(a)[2]. The Second

---

[2] Although Section 2339A is entitled "Providing material support to terrorists," the "title of a statute '[is] of use only when [it] sheds light on some ambiguous word or phrase' in the statute

4

Circuit has held that section 2339A "requires . . . that the defendant provide support or resources *with the knowledge or intent* that such resources be used to commit specific violent crimes." *United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009) (emphasis in original). Other courts that have considered the question have agreed with the Second Circuit's interpretation. See *United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007) ("To meet its burden under § 2339A, the Government must at least prove that the defendants provided material support or resources *knowing that they be used in preparation for* the violent offense) (emphasis in original); *Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1133 (9th Cir. 2007) *overruled on other grounds by Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ("Congress could have, but chose not to, impose a requirement [in section 2339B] that the defendant act with the specific intent to further the terrorist activity of the organization, a requirement *clearly set forth in section § 2339A . . . but left out of section § 2339B*") (emphasis added); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1058 (S.D. Ohio 2007) ("§ 2339A was limited to individuals (such as donors) who intended to further the commission of specific federal offenses.") *See also United States v. Chandia*, 514 F.3d 365, 372 (4th Cir. 2008) (noting that "[t]he elements of the separate crimes charged under § 2339A and § 2339B do not overlap").

The indictment fails the specific intent requirement because the indictment does not allege that Sedina Hodzic knew that her money, materials, supplies, or other listed

---

itself." *Carter v. United States*, 530 U.S. 255, 267 (2000) (quoting *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998)) (emphasis added). It goes without saying that the list of specific statutory references in Section 2339A(a) is not ambiguous.

5

assistance would be used in support of a conspiracy to murder and maim overseas in violation of 18 U.S.C. §956. The general allegation is insufficient to state an offense and must be supported with sufficient factual allegations to demonstrate a violation. *See Panarella*, 227 F.3d at 685. Moreover, merely alleging that material supplies and support were provided to Pazara with knowledge that Pazara "who was fighting" abroad, would use them *in that fighting* is not enough. Indeed, Pazara might conceivably have used the funds to provide food and medicine to the local population, or spent the money on wine, women, and song, all things that combatants have been known to do in the combat zone, but which would not constitute a conspiracy to commit murder. In fact, this was the precise reason that Congress passed §2339B.

> B. The history of §2339A and §2339B makes clear that Sedina Hodzic may not be charged with a violation of 2339A(a) based on the knowledge that she is contributing funds to an individual who is engaged or intends to engage in murder abroad.

In order to understand the significance of the intent requirements of § 2339A(a), it is important to understand the history of both "material support" statutes (18 U.S.C. § 2339A(a) and 18 U.S.C. § 2339B). Congress passed the first material support statute (now § 2339A(a)) in 1994 in response to the World Trade Center bombing on February 26, 1993. 18 U.S.C. § 2339A(b) (1994 ed.); *see also* Andrew Peterson, *Addressing Tomorrow's Terrorists*, 2 J. Nat'l Security L. & Pol'y 297, 316 (2008) (hereinafter Peterson).

Section 2339A, both in its original and current form, was judged to be a limited tool in combatting terrorism because of its exacting "specific intent" requirement that

6

makes "it very difficult to prosecute those who provide fungible assets." *Peterson,* at 348. Under § 2339A, "[a] person could donate thousands of dollars to Hamas or Hezbollah, for example, so long as he or she thought the money might be spent on the political or social services those groups provided." Robert M. Chesney, *The Sleeper Scenario: Terrorism-support Laws and the Demands of Prevention*, 42 Harv. J. on Legis. 1, 26-30 (2005). Thus, §2339A left a "gap" in antiterrorism law. *See, e.g.,* Andrew Peterson, *Addressing Tomorrow's Terrorists*, 2 J. Nat'l Security L. & Pol'y 297, 323 (2008) (listing "a high scienter requirement and a specific nexus requirement" as "two things that limited 2339A"); *id*. at 348 ("2339A's specific intent requirement makes it very difficult to prosecute those who provide fungible assets."); Major Dana M. Hollywood, *Redemption Deferred: Military Commissions in the War on Terror and the Charge of Providing Material Support for Terrorism*, 36 Hastings Int'l & Comp. L. Rev.1, 76 (2013) ("[S]ection 2339A includes a specific intent element"). Antiterrorism experts, in particular, have acknowledged the "limited" scope of section 2339A. *See*, e.g., Robert M. Chesney, *The Sleeper Scenario: Terrorism-support Laws and the Demands of Prevention*, 42 Harv. J. on Legis. 1, 26-30 (2005), *available at* http://works.bepress.com/cgi/viewcontent.cgi?article=1004&context=robert_chesney. The staff of the 9/11 Commission observed that, under § 2339A, "prosecuting a financial supporter of terrorism required tracing donor funds to a particular act of terrorism—a practical impossibility." Staff of National Commission on Terrorist Attacks upon the United States, Monograph on Terrorist Financing 31–32 (2004), *available at* http://www.9-11commission.gov/staff_statements/911_TerrFin_Monograph.pdf. As Jeff Breinholt,

7

Deputy Chief of the Counterterrorism Section at the U.S. Department of Justice under President George W. Bush, explained, § 2339A has an "exacting intent requirement." Jeff Breinholt, *Counterterrorism Enforcement: A Lawyer's Guide*, Office of Legal Education, Executive Office for United States Attorneys 272, 285–86 (2004), *available at* http://www.americanbar.org/content/dam/aba/migrated/2011_build/law_national_security/breinh olt_counterterrorism_enforcement.authcheckdam.pdf.

In order to fill the gap left by § 2339A, Congress passed § 2339B as part of the Antiterrorism and Effective Death Penalty Act of 1995. *See* H.R. Rep. No. 104-383, at 43 (1995). In contrast to § 2339A, § 2339B prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization" regardless of whether or not the support is intended to support the terrorist organization's illegal activities. 18 U.S.C. § 2339B(a)(1) (1996 ed.). The Act defines a "terrorist organization" as "an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act." 18 U.S.C. § 2339B(g)(6) (1996 ed.). "The primary difference between §§ 2339A and 2339B is that § 2339A requires proof of a specific intention to assist in the violation of another anti-terrorism statute, whereas § 2339B does not require such a specific intent." Robert M. Twiss, *National Security: The Impact on U.S. Foreign Policy Arising from Private Actions Initiated Against Foreign Nations from within the United States*, 3 Creighton Int'l & Comp. L.J. 47, 77 (2012). In other words, while "section 2339A was limited to donors intending to further the commission of specific federal offenses, Congress passed section 2339B to encompass donors who acted without the

8

intent to further federal crimes." *United States v. Assi*, 414 F. Supp. 2d 707, 722 (E.D. Mich. 2006).

Applying the statutory history to the present case, Sedina Hodzic's conduct, as alleged in the indictment, of supplying various tangible items to Pazara without an intended specified purpose, and without the requisite intent, is precisely what the commentators on § 2339A(a) described as being insufficient to constitute a criminal charge under that section. Indeed, if a defendant could have been charged under §2339A(a) for giving support to a person or organization that he or she knew was engaged in a criminal act, as Sedina Hodzic has been, there would have been no need to enact § 2339B.

### C. Permitting a charge of §2339A(a) without specific intent raises serious constitutional questions.

Permitting Sedina Hodzic to be tried on the general intent allegation that she intended to give support to Pazara with the knowledge that Pazara and others were fighting in Syria, Iraq and elsewhere under §2339A(a) not only violates the plain language and congressional intent of the statute, it also raises serious constitutional questions.

In the landmark case *Humanitarian Law*, the Supreme Court held that the language in 2339B lawfully permitted prosecution of an individual who provided support to a terrorist organization even if the individual intended the support to be used for purely lawful purposes because the support was fungible. *See Humanitarian Law Project*, 561 U.S. at 31. The Court, however, limited the fungible theory to section 2339B, because, as

9

the Supreme Court implied, applying the fungible theory to section 2339A(a) would have dangerous and unconstitutional consequences. In response to the dissent's argument that permitting prosecution of aid given with lawful intent under a fungible theory created vagueness problem as "there is 'no natural stopping place'" for the proposition, the majority responded that there is such a "natural stopping place" under § 2339B. "The statute reaches only material support when coordinated with or under the direction of a designated foreign terrorist organization." *Id*. This "natural stopping point" for the fungible theory simply does not exist under § 2339A(a). Unlike §2339B, there is no requirement that the Secretary of State designate individuals as an FTO.

If the fungible theory applies to § 2339A(a), a reasonable person would not know whether or not his conduct is permitted. Under the Government's theory, § 2339A(a), despite its plain language, forbids providing material support to organizations or individuals that one knows are engaged in certain illegal activities, even if one does not intend or know that the support will be used for those illegal activities, as long as the support frees up resources for the illegal activities. If this interpretation of § 2339A(a) were correct, it would be unclear to a person of ordinary intelligence what conduct is actually forbidden. For instance, suppose someone gives money to an overseas fighter intending for the overseas fighter to spend the money on food (or even self-defense), believing that the money will be so used. The plain language of § 2339A(a) does not prohibit this conduct, yet this conduct is entirely consistent with the specific allegations against Sedina Hodzic in this indictment.

10

The Government's interpretation of § 2339A(a) would also encourage arbitrary enforcement of the statute. A statute encourages arbitrary enforcement when it fails "to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Kolender v.Lawson*, 461 U.S. 352, 362 (1983). Although section 2339A(a) is not "standardless" as written, the indictment's rewrite, which effectively removes the statute's specific intent requirement, has no limiting principle. *C.f. Humanitarian Law*, 561 U.S. at 31 (noting that section 2339B has a "natural stopping place," because it "reaches only material support coordinated with or under the direction of a designated foreign terrorist organization"); United States v. *Awan*, 459 F.Supp.2d 167,179 (E.D. N.Y. (  ) (finding section 2339A(a) not "vague-as-applied" but *only* because the statute "raise[d] the scienter requirement" from section 2339B and required "specific intent" to support a "specific crime").

> II. The indictment fails to allege sufficient facts in order for Sedina Hodzic to defend against the charge of conspiracy to commit murder abroad that is the alleged object of the conspiracy charged in Count I and the substantive charge in Count III.

In addition to failing to allege the specific intent to support a conspiracy to commit murder and maiming necessary for a violation of 2339(A)(a), the indictment is deficient in failing to sufficiently provide notice concerning the underlying conspiracy to commit murder and maiming.

The indictment fails to fulfill the requirement of notice to Sedina Hodzic of the allegations against which she must defend because it does not give her sufficient notice of the underlying conspiracy to violate 18 U.S.C. § 956(a)(1).

11

The term "murder" within 18 U.S.C. § 956(a)(1) has been interpreted as having the meaning of murder provided in 18 U.S.C. § 1111. *See United States v. Awan*, 459 F. Supp. 2d 167, 175-176 (E.D.N.Y. 2006). Murder is defined in Section 1111 as "the unlawful killing of a human being with malice aforethought."

The underlying conspiracy to kill persons in a foreign country for which Sedina Hodzic and her codefendants are alleged to have conspired to materially support and have materially supported is alleged in Count II of the indictment and concerns the agreement by Paraza and others to fight in Syria, Iraq and elsewhere supported by the overt act of Pazara's travel to Southwest Asia.

Neither the term "fighting" nor "fought", however, is necessarily synonymous with murder. The indictment does not define the term "fighting," and could indeed simply mean armed combat or insurrection. The generic term "fighting," without more specificity, includes the potential that Sedina Hodzic was indicted for materially supporting actions which would not constitute murder as criminalized by 18 USC § 1111, such as conduct falling under the rubric of combatant immunity.[3]

Where a Grand Jury's basis for finding that a conspiracy to commit murder includes undefined alternative theories of prosecution, the indictment fails to provide sufficient notice and must be dismissed without prejudice. *See Awan*, 459 F. Supp. 2d at 175-176 (dismissing the alleged conspiracy to commit murder abroad and related

---

[3] "[C]ombatant immunity is a doctrine reflected in the customary international law of war. It forbids prosecution of soldiers for their lawful belligerent acts committed during the course of armed conflicts against legitimate military targets." *United States v. Lindh*, 212 F. Supp. 2d 541, 553 (E.D. Va. 2002).

12

material support counts without prejudice because the indictment failed to make the necessary specific allegations concerning the alleged murder to determine the theory of prosecution under 18 U.S.C. § 1111.) As the court noted in *Awan*, this failure cannot be cured through a bill of particulars "since those filings will not reveal what the grand jury found…." *Awan*, 459 F. Supp. 2d at 176, n 7.

In Sedina Hodzic's case, the deficiency in specificity is likewise not cured by specific allegations concerning the conspiracy to commit murder. None of these allegations cure the potential that the term "fighting" – the term used by the grand jury in their indictment -- encompassed lawful combat. Indeed, even the specific communications which the indictment alleges occurred between the defendants and Pazara regarding updates on the fighting (¶¶ 13-15), reference conduct consistent with a conspiracy to engage in armed combat, not necessarily killing or maiming.

Likewise, the allegation that the fighting was in support of designated FTOs does not describe a conspiracy to murder. First, supporting a common goal of a terrorist organization is in and of itself not criminalized. See *Humanitarian Law* 561 U.S. at ¬36 (stating that "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups.") In order to commit a crime, an individual must do more than support an FTO's objectives; he or she must provide that support coordinated with or under the direction and control of the FTO. Here, the indictment does not allege that the conspiracy to fight by Pazara and others was under the direction and control of an FTO. Nor does the factual allegation that Pazara told an unknown person "most of a FTO which he identified had

13

joined another FTO and they were making progress, with the Islamic State spreading every day" (¶ 39) imply that he was acting under control of an FTO. Read in the light most favorable to the government, this allegation is at most the reporting of facts occurring on the ground and does not amount to operating under control any more than does the conduct of a battle field reporter describing his observations.

Finally, even if the phrase "supporting FTOs" was inferred to mean Pazara was acting under the control of an FTO, his combat activities were not necessarily prosecutable. An organization can be both a designated FTO and a "privileged" belligerent. See *United States v. Yunts*, 924 F.2d 1086, 1097 (D.C. Cir. 1991) (whether or not combat activities are privileged is dependent on whether the combatants generally conduct their operations in accordance with the laws of war.)

The failure of the indictment to specify sufficient facts concerning the conspiracy to commit murder does not put Sedina Hodzic on notice of the underlying offense; therefore, it does not provide notice of the potential for a defense of combatant immunity to the alleged conspiracy to commit murder abroad. For instance, the defense of combat immunity would be inapplicable if the alleged conspiracy to murder is later indicted as a conspiracy to murder prisoners, as combat immunity would not shield the killing of prisoners. Conversely, if the agreement were merely to fight as a uniformed force in support of the Syrian rebels defending the Syrian population from armed attack by the forces of President Assad, the defense would be potentially relevant.

At this point, it is impossible to discern whether this or another theory underlies the alleged conspiracy to commit murder abroad. Accordingly, the indictment's failure to

14

specify what would constitute murder abroad, in addition to eliminating the possibility that the Grand Jury considered lawful conduct as the basis for the alleged conspiracy to commit murder abroad, fail to provide sufficient notice for Sedina Hodzic to determine the applicability of appropriate defenses. The indictment in therefore deficient as a matter of law.

For the reasons stated above, Sedina Hodzic respectfully prays that this Honorable Court dismiss Counts I and III.

Respectfully submitted,

*/s/Paul J. D'Agrosa*
Paul J. D'Agrosa, #36966MO

LAW OFFICES OF
WOLFF & D'AGROSA
7710 Carondelet, Suite 200
Clayton, Missouri 63105
Telephone: (314) 725-8019
Facsimile:  (314) 725-8443
Email: paul@wolffdagrosa.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

*/s/ Paul J. D'Agrosa*