**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **Vs.** | )   **No. 4:15 CR 00049-003 CDP (DDN)** |
| | ) |
| **NIHAD ROSIC,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROSIC'S**
**MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(B)**

**INTRODUCTION**

Defendant Rosic, together with Co-Defendants Siki Ramiz Hodzic, Sedina Unkic Hodzic, Mediha Medy Salkicevic, Armin Harcevic, and Jasminka Ramic, are charged with conspiracy to conspire to provide material support in Count I and in Count III, did knowingly and attempt to provide material support of terrorism in violation of 18 U.S.C. § 2339A.  The underlying offense which Defendant Rosic and his Co-Defendants are charged with is supporting a conspiracy to murder or maim in a foreign county in violation of 18 U.S.C. § 956(a)(1).

In Count II, Defendant Rosic, Co-Defendant Siki Ramiz Hodzic and Abdullah Ramo Pazara (an unindicted co-conspirator now deceased) are charged with conspiracy to murder or maim overseas in violation of 18 U.S.C. § 956(a)(1).

The factual allegations supporting the charges against Defendant Rosic are detailed as follows:

1

1.      Abdullah Pazara[1], a Bosnian native who immigrated to the United States, became a naturalized citizen, and resided in St. Louis, Missouri. *See* Indictment, Introduction, ¶ 1.

2.      Mr. Rosic was a Bosnian native who immigrated to the United States, became a naturalized citizen, and resided in Utica, New York.  *See* Indictment, Introduction ¶ 6.

3.      Abdullah Pazara and other persons known to the Grand Jury facilitated the conspiracy by traveling to Syria, Iraq and elsewhere to support designated Foreign Terrorist Organizations (hereinafter referred to as "FTOs"). *See* Indictment, Count I, Manner and Means, ¶ 4.

4.      Defendant Rosic and his Co-Defendants facilitated the conspiracy by contributing their personal money, intending the money to be transferred to and used in support of Abdullah Pazara and others known and unknown to the Grand Jury who were fighting in Syria, Iraq and elsewhere in support of the designated FTOs.  *See* Indictment, Count I, Manner and Means, ¶ 6.

5.      During the conspiracy Defendant Rosic and his Co-Defendants knew that individuals received materials, money, and supplies provided by the Co-Defendants while Abdullah Pazara and others were engaged in violent activities overseas and further knew and intended that the materials, money, supplies, and property that were provided to Pazara and others would be used to support individuals who were fighting with and in support of the designated FTOs.  *See* Indictment, Count I, Manner and Means, ¶ 7.

---

[1] According to discovery provided by the Government Mr. Pazara was killed on September 21, 2014.

2

5.      In order to avoid detection, the members of the conspiracy used telephones and online social media websites, such as Facebook, to otherwise communicate with members of  the conspiracy.  *See* Indictment, Count I, Manner and Means, ¶ ¶ 12, 13.

6.      In order to avoid detection, the members of the conspiracy used coded language to (1) refer to persons and groups and (2) plan the means by which they could provide support.  *See* Indictment, Count I, Manner and Means, ¶ 14.

7.      In order to avoid detection, the members of the conspiracy sometimes used nicknames, fictitious names, names of third persons and titles when referring to members of the conspiracy.  *See* Indictment, Count I, Manner and Means, ¶ 15.

8.      On April 1, 2014, Co-Defendant Siki Hodzic told Defendant Rosic that five good snipers could do wonders in Syria and that he (Hodzic) had watched a video which was comprised of violent acts as well as a video on the activities of the unindicted co-conspirator Abdullah Rama Pazara's group. *See* Indictment, Count I, Manner and Means, ¶ 40.

9.      On April 15, 2014, Defendant Rosic transferred $500 to Co-Defendant Siki Hodzic in St. Louis, Missouri, via Western Union.  *See* Indictment, Count I, Manner and Means, ¶ 41.

10.     On April 25, 2014, Co-Defendant Siki Hodzic advised Mr. Rosic that if he went to Syria, he need not purchase any supplies and he (Hodzic) would provide what he (Rosic) needed. *See* Indictment, Count I, Manner and Means, ¶ 42.

11.     On July 20, 2014, Defendant Rosic unsuccessfully attempted to board Norwegian Airlines Flight No. DY7007 at JFK Airport in New York intending to travel

3

to Syria to join Mr. Pazara and others who were fighting in Syria, Iraq and elsewhere in

support of the designated FTOs.  *See* Indictment, Count I, Manner and Means, ¶ 45.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 7(c) (1) provides that the:

> [I]indictment . . . must be a plain, concise, and definite written statement of
> the essential facts constituting the offense charged . . . A count may
> incorporate by reference an allegation made in another count . . . A count
> may allege that the means by which the defendant committed the offense are
> unknown or that the defendant committed it by one or more specified means.

The Supreme Court has identified the principal criteria for judging the sufficiency

of an indictment:  (1) if it contains all of the essential elements of the offense charged, (2)

fairly informing the defendant of the charges against which he must defend, and (3)

alleges sufficient information to allow a defendant to plead a conviction or acquittal as a

bar to a subsequent prosecution.  *United States v. Huggans*, 650 F.3d 1210, 1217 (8th Cir.

2011)(citing *United States v. Summers*, 137 F.3d 597, 601 (8th Cir. 1998). An indictment

does not provide adequate notice to the defendant unless the general statement of the

crime charged "is accompanied by the specific facts constituting the offense."  *United

States v. Helmel*, 769 F.3d 1206, 1322 (8th Cir. 1985)(quoting *Hamling v. United States*,

418 U.S. 87, 117-118 (1974)).

To ensure that the specific facts alleged in the indictment are sufficient to

constitute the crime charged, a district court may review the facts in the indictment to see

whether, as a matter of law, they reflect a proper interpretation of criminal activity under

the relevant criminal statute.  *United States v. Wecht*, 2006 U.S., Dis. LEXIS 44842 *3

(W.D. Pa. June 29, 2006)(citing *United States v. Panarella*, 227 F.3d 678, 685 (3rd Cir.

4

2000).  The constitutionality of a statute as well as its correct interpretation can be raised in a motion to dismiss. *United States v. Islamic Am. Relief Agency*, 2009 U.S. Dist. LEXIS 106021, *4 (W.D.Mo. Nov. 13, 2009).   In the instant case, after a careful review of the specific facts alleged in the Indictment, it is readily apparent that the Indictment is fatally defective.

**ARGUMENT**

A.      *Analysis of the Problems Associated with Multi-Level Inchoate Offenses as Charged in the Indictment*

Inchoate crimes, which are also referred to as incomplete crimes, are acts involving the tendency to commit, or to indirectly participate in a criminal offense. The most comprehensive treatment of the viability of "double inchoate" offenses appears in a 1989 law review article, Double Inchoate Crimes, 26 HARV.J ON LEGIS. 1 (Winter 1989)(hereinafter "Robbins"), by Professor Ira P. Robbins, Barnard T. Welsh Scholar and Professor of Law and Justice at The American University, Washington College of Law (hereinafter "Robbins").

In his article, Professor Robbins defines an inchoate offense as one that "allow[s] punishment of an actor even though he has not consummated the crime that is the object of his efforts."  Robbins at 3.  As Professor Robbins points out, the drafts of the Model Penal Code, art. 5 commentary at 293 (Proposed Official Draft 1985), noted that the shared characteristic among inchoate offenses is they make criminal that conduct which is "designated to culminate in the commission of a substantive offense, but has failed in the discrete case to do so or has not achieved its culmination because there is something that the actor or another still must do."  Robbins, at 7, n. 10.

5

The problems inherent in multi-level inchoate offense have long been recognized. Professor Robbins points out that the "main purpose of punishing inchoate crimes is to allow the judicial system to intervene before an actor completes the object crime." Robbins, at 3.  In discussing "double inchoate" offenses, Professor Robbins states that "[j]udicial inquiry into the validity of double inchoate offenses has focused on the question of whether an inchoate offense can have as its object another inchoate offense." Robbins, at 5.

While Professor Robbins does not condemn "double inchoate" offenses altogether (although he does find a need to minimize them, and finds some, such as "conspiracy to attempt," and attempt to conspire," to be "unnecessary," Robbins, at 89-91), he does not confront the situation Count I presents here:  a triple inchoate offense that contains as its primary element a "conspiracy to conspire."

In the more limited context of "double inchoate" offenses, Professor Robbins' explained the two principal objections to such offenses:  (1) the "logical absurdity" problem and (2) the Due Process notice problem.  The former concentrates on the logical flaws in the conceptual framework of "double inchoate" offenses, while the latter focuses on the inadequate notice multi-level inchoate offenses provide with respect to just what conduct crosses the line between lawful and criminal behavior.

The "logical absurdity" of multi-level inchoate crimes was initially expressed in *Wilson v. State*, 53 Ga. 205 (1874) in which the Court held that the offense of "attempted assault" did not exist because:

As an assault is itself an attempt to commit a crime, an attempt to make an assault can only be an attempt to attempt to do it, or to state the matter still more definitely, it is to do any act towards doing an act towards the commission of an offense.

As the Court in *Wilson* concluded: "[t]his is simply absurd[,]" elaborating that:

[t]he refinement and metaphysical acumen that can see a tangible idea in the words of an attempt to act is too great for practical use.  It is like conceiving of the beginning of eternity or the starting place of infinity.

Applying the logic of Professor Robbins to the instant Indictment, Count I charges a conspiracy under 18 U.S.C. § 2339A to prepare in violation of the substantive proscription of 19 U.S.C. § 2339A to commit conspiracy in violation of 18 U.S.C. § 956.  This piling on of inchoate offenses – establishing, in essence, an unprecedented triple inchoate offense – violates the Fifth Amendment's due process guarantee, requiring the dismissal of Count I by the Court.

Count I of the Indictment states *inter alia:*

Beginning on a date unknown but no later than in May, 2013, and continuing to the present with the exact dates being unknown, in the Eastern District of Missouri and elsewhere . . . the defendants herein, and Abdullah Ramo Pazara  . . . named, but not indicted, and other persons known and unknown to the Grand Jury . . . did knowingly and willfully combine, ***conspire***, confederate and agree with each other, ***to provide and attempt to provide material support*** and resources as defined in Title 18, United States Code, Section 2339A(b), including: currency and monetary instruments (collectively "money"), and property . . . knowing and intending that such money and property were to be used in ***preparation for, and in carrying out***, a violation of Title 18, United States Code, Section 956(a), that is, a ***conspiracy to commit at places outside of the United States*** acts that would constitute offenses and murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.  *See* Indictment, Count I, pages 4-5 (Emphasis added).

7

On its face, Count I charges a conspiracy in violation of 18, U.S.C. § 2339A(b), the object of which is to violate the substantive proscription of 18 U.S.C. § 2339A(b), by providing money and property to be used as material support in ***preparation of*** the commission of ***another conspiracy***, the object of which is to murder and maim persons in a foreign country in violation of 18 U.S.C. § 956 (a).  Count I is, therefore, essentially a charge of a "conspiracy to conspire," where the second conspiracy is not alleged to have occurred but, rather, is alleged only to have ***prepared for***.  In other words, this Count charges a conspiracy with the aim of not actually carrying out a second conspiracy, but, rather, with the more remote and attenuated aim of ***preparing*** to enter a second conspiracy.  By so charging, Count I in effect piles three inchoate offenses atop one another: a **conspiracy** to ***prepare*** to commit another ***conspiracy***.

Count III of the Indictment reads, *inter alia*:

> Beginning on a date unknown but no later than in May, 2013, and continuing through the present with the exact dates being unknown, in the Eastern District of Missouri and elsewhere . . . the defendants herein, and Abdullah Ramo Pazara  . . named, but not indicted, and other persons known and unknown to the Grand Jury . . . did knowingly and willfully provide, and attempt to provide, material supplies and resources, as defined in Title 18, United States Code, Section 2339A(b), to include: United states currency and monetary instruments (money and property . . . knowing and intending that such money and property were to be used in ***preparation for, and in carrying out***, a violation of Title 18, United States Code, Section 956(a), that is, a ***conspiracy to commit at places outside of the United States*** acts that would constitute offenses of murder or maiming if committed in the special maritime and territorial jurisdiction of the United States, with one or more of the conspirators committing an act within the jurisdiction of the United States to effect the object of the conspiracy.  *See* Indictment, Count I, pages 17-18 (Emphasis added).

In sum, Count III charges that 18 U.S.C. § 2339A(b) was substantively violated by the provision of material support, in preparation for the commission of a conspiracy

prohibited by 18 U.S.C. § 956(a)(1) to murder and maim persons in a foreign country. Count III is essentially a charge of a "preparing to conspire."  In other words, this Count charges a substantive offense which did not entail actually carrying out the aim of the alleged conspiracy, but, rather, which entailed preparation to carry out the aim of the alleged conspiracy.  By so charging, Count III piles two inchoate offenses atop one another: *preparing* to commit a *conspiracy.*

As Professor Robbins explains, "[f]or inchoate crimes, that special mental element is an intent to effect the consequences or ultimate harm that is proscribed by the complete object crime."  Robbins, at 8, n. 15.  Robbins further posits that piling inchoate offenses atop each other "raise[s] the possibility  of regression of liability to merely preparatory act[,]" – what he deemed the "most valid criticism inherent in the logical-absurdity approach – defendants do not conspire or solicit another to attempt to commit a crime; rather, they act *with the intention of committing the complete offense itself*."  Robbins, at 72 (footnotes omitted)(emphasis added).

The thrust of the "logical absurdity" objection is that the practice of pyramiding inchoate offenses "would impart criminal liability to acts so removed from the ultimate offense as to qualify as mere preparation – that is, to acts which a court *cannot impute a fully informed intent*.  Robbins, at 65 (footnotes omitted) (emphasis added).

In this case, there is "no completed offense." Consequently, logically, the "regression of liability" in this case is even furthered removed from an "ultimate offense" – to the logically absurd point of acts that qualify merely as "preparation" for "preparation" – a point at which this Court cannot impute formed intent.

9

**B.**     *Failure to allege required specific intent to aid a terrorist act.*

18 U.S.C. § 2339(A) (a) requires that a defendant specifically intend or actually know that the material support he provides will be used for a specific violent offense (in this case, conspiracy to murder or maim in a foreign country).

The Second Circuit has held that Section 2339A(a) "requires . . . that the defendant provide support or resources *with the knowledge or intent* that such resources be used to commit specific violent crimes."  *United States v. Stewart*, 590 F.3d 93, 112 (2d Cir. 2009) (Emphasis in original).  Other courts that have considered the question have agreed with the Second Circuit's interpretation.  See *United States v. Hassoun*, 476 F.3d 1181, 1188 (11th Cir. 2007) ("To meet its burden under § 2339A, the Government must at least prove that the defendants provided material support or resources *knowing that they be used in preparation* for the violent offense.")(Emphasis in original); *Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1133 (9th Cir. 2007) (overruled on other grounds by *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010))("Congress could have, but chose not to, impose a requirement [in Section 2339B] that the defendant act with the specific intent to further the terrorist activity of the organization, a requirement *clearly set forth in section []2339A* . . . but left out of section 2339B.")(Emphasis added); *United States v. Chandia*, 514 F.3d 365, 374 (4th Cir. 2008)(noting that "[t]he elements of the separate crimes charged under § 2339A and § 2339B do not overlap"); *United States v. Abdi*, 498 F. Supp.2d 1048, 1058 (S.D. Ohio 2007)("§2339A was limited to individuals (such as donors) who intended to further the commission of a specific federal offenses").

10

There is absolutely no language in the Indictment which specifically alleges that Defendant Rosic knew his money would be used in support of a conspiracy to murder and maim in violation of 18 U.S.C. § 956(a).  The general allegation contained in the Indictment is insufficient to state an offense and must be supported with sufficient factual allegations to demonstrate a violation.  *United States v. Parnarella*, 227 F.3d 678, 685 (3d Cir. 2000).

The factual allegations supporting Counts I and III allege that Defendant Rosic intended his funds to be used for the support of Abdullah Pazara with the knowledge that he was fighting in Syria, Iraq, and elsewhere.  The Indictment's factual allegations substitute the intent or knowledge that funds would be used to support a conspiracy with an allegation that Defendant Rosic supported an alleged conspirator with the implied knowledge that the funds could be used to further the conspiracy.

The knowledge or intent to support a conspirator is not the same thing as supporting a conspiracy.  Another scenario is that Pazara used the funds to provide food and medicine to the local population or other personal uses for something other than to constitute a conspiracy to commit murder.

As is stated above, Section 2339(A) specifically provides that the evidence must establish that the defendant provided or conspired to provide the support with knowledge or intent that such resource be used to commit specific violent crimes.  *United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009).  Further, *Stewart* also holds that "the mental state in section 2339A extends both to the support itself, and to the underlying purposes for which the support is given." *Id*.

11

C.       *Conspiracy Set Forth in Count II (18 U.S.C. Section 956(a))*

Count II of the Indictment alleges an agreement to use violence against persons outside the United States without any attempt on the part of the Government to provide that the conspiracy was particularized as to the individual or individuals to be harmed, where the harm might occur, when the harm might occur or how the harm might be inflicted.  The unanswered questions raise the issue of the outer boundaries of conspiracy liability.

Section 956 (a)(1) provides:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of  murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy . . . .

In interpreting the necessary requirements of a conspiracy under Section 956(a), the following elements are necessary:  (i) an agreement to engage in criminal activity; (ii) one or more overt acts taken to implement the agreement; and (iii) the requisite intent to commit the substantive crime.  *United States v. Chhun*, 744 F.3d 1110, 1117 (9th Cir. 2014).  In *Chhun* the Court found that the requisite *mens rea* was an "intent to murder." Id. at 1118

The term "murder" within 18 U.S.C. § 956(a)(1) has been interpreted as having the meaning of murder in 18 U.S.C. § 1111. *United States v. Awan*, 459 F.Supp. 2d 167, 175-176 (E.D.N.Y. 2006).  18 U.S.C. § 1111 defines murder as the "unlawful killing of a human being with malice aforethought."  The underlying conspiracy to kill persons in a

foreign country concerns the agreement of Abdullah Pazara and others to fight in Syria, Iraq and elsewhere supported by the overt act of Mr. Pazara's travel to Syria.

Neither the term "fighting" nor "fought" is synonymous with murder.  The Indictment does not define fighting.  The Webster definition of fight includes "to struggle in battle or physical combat."  It is Defendant Rosic's understanding that in the context of the Indictment, the term fighting refers to armed combat.  Although belligerents can, under certain circumstances, commit murder when they kill a member of the opposing force, typically the killing of hostile forces is not murder.  *See* 2 LaFave Substantive Criminal Law § 10.2 ("if a soldier kills an enemy combatant during time of war and within the rules of warfare, he is not guilty of murder," whereas, for example a soldier intentionally kills a prisoner – a violation of the laws of war – then he commits murder").  The generic term "fighting" without more specificity, or more appropriately as set forth in the Indictment, the term combat, necessarily includes the potential that the Grand Jury indicted Defendant Rosic for materially supporting actions which would not constitute murder under 18 U.S.C. 1111.

Where a Grand Jury's basis for finding that a conspiracy to commit murder includes undefined alternative theories of prosecution, the Indictment fails to provide sufficient notice and must be dismissed without prejudice.  *United States v. Awan*, 459 F. Supp. 2d 167, 175-176 (E.D.N.Y. 2006).  In *Awa*n, the district court dismissed the alleged murder  abroad and related material support counts without prejudice because the Indictment failed to make the necessary specific allegations concerning the alleged murder to determine the theory of prosecution under 18 U.S.C. § 1111.

13

The Indictment does not allege that Defendant Rosic was personally involved in any act of violence or anticipated violence, nor that he intended the commission of any specific act of violence.  The most that can be said of Defendant Rosic is that he made a contribution of $500 to Co-Defendant Siki Hodzic to be utilized to assist the widow and children of a fellow Bosnian who was killed.  In May, 2014, Defendant Rosic interacted remotely with Abdullah Pazara on Facebook postings. The postings include tapes of violent acts allegedly purportedly, but not proven to involve Mr. Pazara.   Moreover, the exchanges were also marked by philosophical and religious comments concerning their religious beliefs.   Lastly, these conversations occurred when Defendant Rosic was significantly remote, both physically and geographically, from Mr. Pazara's violent activities.

While it is true that Defendant Rosic attempted to board an airplane on July 20, 2014, his destination was Oslo, Norway, but, he was not permitted to board the plane and returned to his home.  After this incident, he had no further contact with Abdullah Pazara and, in fact, Mr. Pazara was killed in September, 2014.

The Government's discovery discloses another attempt by Defendant Rosic to fly out of the United States on December 7, 2014, from Syracuse International Airport to Sarajavo destination.  However, as with his July attempt, Defendant Rosic was again denied boarding privileges and, again, returned to his home.

Further, as the Government's discovery received to-date discloses, from and after Mr. Pazara's death in September, 2014, Defendant Rosic had no discussions with his (Pazara's) associates in Syria or elsewhere.

14

Taken as a whole, it is impossible to discern whether the Grand Jury indictment alleges material support of a conspiracy to murder persons or simply a conspiracy to engage in an armed conflict.  If the purpose of Rosic was to travel to Syria to fight and he was unable to do so, one can reasonably doubt that his conditional purpose is really a purpose at all, as opposed to perhaps an idle fantasy.[2]   The awareness of the improbability of an event disengages us from serious consideration of what we would do were it to occur.

Likewise, the allegation that the fighting was in support of designated FTOs does not delineate a conspiracy to murder.  First, supporting a common goal of a terrorist organization is, in and of itself, not criminalized.  The Supreme Court in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 36 (2010) stated that:

> Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups.

In order to commit a crime, an individual must do more than support an FTO's objectives – they must provide that support coordinated with or under the direction and control of the FTO.  In the Indictment, it is not alleged that Pazara and other's alleged conspiracy to fight was under the direction and control of an FTO.  Moreover, the factual allegation that Pazara told an unknown person "most of a FTO which he identified had joined another FTO and they were making progress, with the Islamic State spreading every day" does not delineate he is acting under control of an FTO.  This allegation is at

---

[2] Consider the following statement:  Furthermore, isn't the series – fantasizing, wishing, desiring, want, intending – a continuum, making it a rather hazy matter to know just what a person is intending rather than wishing?" Gerald Dworkin & David Blumenthal, Punishment for Intentions, 75 Mind 396, 401 (1966).

most the reporting of facts occurring on the ground and does not amount to operating under control any more than a battlefield reporter.

Even assuming *arguendo* that the phrase "supporting FTOs" was read to indicate Pazara was acting under the control of an FTO or FTOs, it would not necessarily mean that his combat activities were unprivileged and thus liable for the prosecution of murder. Whether or not combat activities are privileged is dependent on whether the combatants generally conduct their operation in accordance with the law of war.  *United States v. Yunis*, 924 F.2d 1086, 1097 (D.C. Cir. 1991).  An organization can be both a designated FTO and a "privileged" belligerent.  See *United States v. Yunts*, 924 F.2d 1086, 1087 (D.C. Cir. 1991)(whether or not combat activities are privileged is dependent on whether the combatants generally conduct their operations in accordance with the laws of war.

 The Indictment is bereft of any facts concerning a conspiracy to murder and maim in a foreign country attributable to Defendant Rosic other than exaggerated conversations with Mr. Pazara on Facebook – and none after his (Pazara's) death in September, 2014.

**CONCLUSION**

WHEREFORE, for the foregoing reasons stated herein, Defendant Rosic respectfully moves the Court to grant his Motion to Dismiss Counts I, II and III of the Indictment.

Respectfully submitted,

/S/ *JoANN TROG*
JoANN TROG            42725MO
Attorney for Defendant
121 West Adams Avenue
St. Louis, Missouri 63122
Telephone:  (314) 821-1111
Facsimile:  (314) 821-9798
E-Mail:      Jtrogmwb@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2015, the foregoing was filed electronically with the Clerk of the Court to be served upon Matthew Drake, Kenneth Tihen and Howard Marcus, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102 and Mara M. Kohn, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

/S/ *JoANN TROG*