IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAMIZ HODZIC, )<br>)<br>Defendant. ) | Case No. 4:15 CR 49 CDP<br>(DDN) |

## **DEFENDANT RAMIZ HODZIC'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**

### I.   The Indictment

The indictment names Hodzic in all three of its counts, but its principal allegation is found in Count II, which charges that Hodzic violated 18 U.S.C. § 956(a) by conspiring "to commit one or more acts outside the United States that would constitute the offense of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States . . . ."[1]  Section 956(a) is also central to Counts I and III.  Count I charges that Hodzic violated 18 U.S.C. § 2339A by conspiring to provide "material support and resources . . . knowing and intending" that it was to be used "in preparation for, and in carrying out, a violation of" section 956(a).[2]  Count III charges Hodzic with a substantive violation of section 2339A alleging that he provided "material supplies and resources . . . knowing and

---

[1]   Indictment at 16.
[2]   *See id.* at 4.

intending that" this material "was to be used in preparation for, and in carrying out a" violation of section 956(a).[3]

Replete with rhetoric about supporting terrorism and foreign terrorist organizations,[4] the indictment, however, does not require the government to prove any connection to terrorism or terrorist acts. Although the title to section 2339A is "Providing material support to terrorists," the title is not an element.[5] Neither section 956(a)[6] nor section 2339A[7] use the words "terrorist" or "terrorism." In *Unit-*

---

[3] *See id.* at 17.

[4] *See, e.g., id.* at 3, ¶18 (list of alleged terrorist organizations "collectively referred to as 'designated FTOs'"; 4 (Conspiracy to provide material support to terrorists); 17 (Providing Material support to terrorists). In its press release announcing the indictment, the Department of Justice emphasized that it was prosecuting those who "seek to provide material support to terrorists and terrorist organizations . . . ." *See* February 6, 2015 Press Release (available at **Error! Main Document Only.**http://www.justice.gov/opa/pr/six-defendants-charged-conspiracy-and-providing-material-support-terrorists).

[5] A statute's title has meaning only when it aids interpretation of an ambiguous word or phrase in the statute's text. *See Carter v. United States,* 530 U.S. 255, 267 (2000). Section 2339A's text, however, is unambiguous.

[6] **(a)(1)** Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2)." 18 U.S.C. § 956(a)(1).

[7] Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 32, 37, 81, 175, 229, 351, 831, 842(m) or (n), 844(f) or (i), 930(c), 956, 1091, 1114, 1116, 1203, 1361, 1362, 1363, 1366, 1751, 1992, 2155, 2156, 2280, 2281, 2332, 2332a, 2332b, 2332f, 2340A, or 2442 of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), section 46502 or

ed States v. Hassan, 742 F.3d 104 (4th Cir. 2014), the court noted that the parties agreed that "to obtain a conviction under 18 U.S.C. § 2339A for the Count One conspiracy, the government was required to prove as to each appellant: (1) that he entered into a conspiracy; (2) that the object of the conspiracy was to provide material support or resources; and (3) that he then knew and intended that the provision of such material support or resources would be used in preparation for, or in carrying out a violation of 18 U.S.C. § 956."[8]  Thus, section 2339A's elements can be stated without any reference to terrorists or terrorism.  Moreover, section 2339A does not require that material support be given to a designated foreign terrorist organization so long as the support was provided in furtherance of the specified crimes.[9]

The indictment's section 2339A offenses accuse Hodzic of providing support in furtherance of a section 956(a) violation, making 956(a) the crux of the indictment.  He's alleged to have conspired to provide support for preparation in violating section 956(a), Count I, violated section 956(a), Count II, and provided support in preparation for violating section 956(a), Count III.  Section 956(a), howev-

---

60123(b) of title 49, or any offense listed in section 2332b(g)(5)(B) (except for sections 2339A and 2339B) or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

[8]   Id. at 111-12.

[9]   See Chirstina Parajon Skinner, Punishing Crimes of Terror in Article III Courts, 31 Yale L. & Pol'y Rev. 309, 333-34 (2013).

er, is not confined to terrorism cases. One court noted that section 956(a) "does not limit its application to 'terrorist' acts, or to acts that affect United States citizens or interests. The statute applies to '[w]hoever . . . conspires with one or more other persons . . . to commit at any place outside the United States an act that would constitute the offense of murder.'"[10]  In *United States v. Obregon-Reyes,* 2013 WL 150114 at **1 (5th Cir. 2013), and *United States v. Fernandez,* 559 F.3d 303, 325-28 (5th Cir. 2009), defendants were convicted under section 956(a) for killings related to drug trafficking, and in *United States v. Wharton*, 320 F.3d 526, 537-38 (5th Cir. 2003), the killing in Haiti that led to a 956(a) conviction was in connection with insurance fraud. Thus, the government need prove nothing about terrorism or terrorist acts to obtain a conviction under section 956(a). The elements of this offense are: "(1) the defendant agreed with at least one person to commit murder [or to kidnap or maim another person]; (2) the defendant willfully joined the agreement with the intent to further its purpose; (3) during the existence of the conspiracy, one of the conspirators committed at least one overt act in furtherance of the object of the conspiracy; and (4) at least one of the conspirators was within the jurisdiction of the United States when the agreement was made."[11]

Perhaps the absence of a legal obligation to prove any connection to terrorism or terrorist acts is the reason that the indictment's factual allegations provide no basis to support the rhetoric about terrorism. It makes evident that Hodzic and

---

[10]  *United States v. Chhun,* 744 F.3d 1110, 1116 (9th Cir. 2014).
[11]  *Obregon-Reyes* at **6 (quoting *Wharton*).

his codefendants were supporting a single individual, Abdullah Ramo Pazara, who traveled to Syria and fought as a soldier.[12] It alleges that defendants collected money, primarily from each other,[13] and used this money for two purposes: (1) to purchase supplies for Pazara's use and for him to share with co-combatants and (2) to provide direct monetary support for Pazara.[14]  Although the indictment repeatedly alleges that defendants sought to support Pazara and "individuals who were fighting with, and in support of the designated FTOs [foreign terrorist organizations]," it provides no information about who Pazara and his co-combatants were fighting with or for in 2013 and 2014.[15]

The indictment's failure to do more than vaguely allege that Pazara was fighting either with or for terrorist organizations is a fundamental and fatal defect, as will be argued below, because it is impossible as a practical matter to determine the identities and allegiances of those fighting in Syria.  Even a year after the period alleged in the indictment, the Congressional Research Service noted:

> The following profiles offer limited descriptions of pro-Asad forces and select political and armed opposition forces. The profiles are based on open primary sources and CRS cannot independently verify the size, equipment, and current precise areas of operation of the armed groups described. At present, open source analysis of armed groups operating in Syria relies largely on the self-reporting of individual groups and coalitions. **Information is not evenly and regularly available for all groups. The size and rela-**

---

[12]   See Indictment at 5, ¶¶4, 5; at 6, ¶¶6, 7, 8; at 7, ¶¶9, 11; at 8, ¶13; at 9, ¶16; at 10, ¶¶21, 24; at 12, ¶¶33, 34; at 13, ¶38; at 14, ¶¶43, 44.
[13]   See id. at 5, ¶¶5-7.
[14]   See id. at 6-7, ¶¶8-9.
[15]   See id. at 7, ¶¶11, 10; at 9, ¶16; at 10, ¶¶ 21, 24; at 12, ¶¶33, 34; at 13, ¶38; at 14, ¶¶38, 44; at 15, ¶¶46, 47, 48.

> **tive strength of groups vary by location and time. Many groups and units who claim to coordinate under various fronts and coalitions in fact appear to operate independently and reserve the right to change allegiances. The use of religious or secular imagery and messages by groups may not be reliable indicators of the long-term political aims of their members or their likely success in implementing those aims.**[16]

The situation in Syria defies comprehension and the indictment's blithely casual use of terms such as "foreign terrorist organizations," is more misleading than informative. In testimony before congressional committees, executive branch officials, including Director of National Intelligence James R. Clapper, National Counterterrorism Center Deputy Director John Mulligan, and Nicholas J. Rasmussen, Director, U.S. National Counterterrorism Center Counterterrorism Center, reported:

> By February 2014, . . . the strength of the insurgency in Syria at "somewhere between 75,000 or 80,000 or up to 110,000 to 115,000 insurgents," who were then-organized **"into more than 1,500 groups of widely varying political leanings."** Among these forces are violent extremist groups such as Jabhat al Nusra and the Islamic State organization. According to U.S. officials, from early 2011 through 2015, more than 25,000 foreign fighters from more than 100 countries,8 including at least 4,500 fighters from "Western countries," may have travelled to Syria as part of a trend that is "unprecedented" relative to other conflicts involving foreign recruits.[17]

Furthermore, the aggregate value of the support that defendants provided to Pazara, was quite small. In all the indictment alleges that defendants sent $5,850

---

[16] Christopher M. Blanchard, Carla E. Humud, Mary Beth D. Nikitin, *Armed Conflict in Syria: Overview and U.S. Response,* Congressional Research Service, October 9, 2015 at 11 (emphasis added).

[17] *Id.* at 9-10 (emphasis added).

to Pazara.[18]  As to supplies, Hodzic sent $538.00 worth of uniforms, clothing, gear, boots, and military surplus items to Pazara on August 23, 2013, according to the indictment.[19]  By way of contrast, the New York Times reported on February 28, 2013, that the United States was planning to send $60 million in aid to forces fighting against Syria's president, Bashar al-Assad.[20]  On October 28, 2013, Hodzic sent $1,913.54 worth of such supplies to Pazara.[21]  The government will concede, however, that nothing from the second shipment ever reached Pazara.  The entire shipment was returned to the United States where law enforcement officers examined and inventoried it before the Postal Service released it to Hodzic.

## ARGUMENT

**I.   This Court may review the indictment to ensure that (1) it alleges specific facts sufficient to constitute the crimes charged; (2) reflects a proper interpretation of criminal activity under the relevant statute; and (3) complies with constitutional requirements.**

Required by rule to provide a plain, concise, and definite statement of the essential facts constituting the offenses charged,[22] an indictment must: (1) contain all of the elements of the charged offenses; (2) inform the defendant of the charges against which he or she must defend; and (3) provide sufficient information to

---

[18]   *See id.* at 10, ¶24; at 10-11, ¶25; at 12, ¶¶33-34; at 13, ¶38; at 14, ¶43. The indictment also alleges that defendants sent money to help families in Bosnia and for individuals to travel to Syria to transport supplies to Pazara.  *See id.* at 14-15, ¶¶ 44, 46, 47, 48.

[19]   *See id.* at 10, ¶21.

[20]   *See* Michael R. Gordon, *U.S. Steps Up Aid to Syrian Opposition, Pledging $60 Million,* N.Y. Times, Feb. 28, 2013, available at http://www.nytimes.com/2013/03/01/world/middleeast/us-pledges-60-million-to-syrian-opposition.html

[21]   *See id.* at 11, ¶¶29-31.

[22]   *See* Fed. R. Crim. P. 7(c).

permit double jeopardy review in a subsequent prosecution.[23]  Accordingly, it must allege specific facts constituting the offenses charged.[24]  In addition, an indictment must properly interpret the relevant criminal statute's definition of the conduct criminalized; that is, "if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," then the reviewing court must dismiss the indictment under Fed. R. Crim. P. 12(b)(2).[25]

## II.  Count I utterly fails to satisfy Fed. R. Crim. P 7(c)'s criteria because it illogically and absurdly alleges that defendants conspired to prepare to conspire.

The indictment relies on its rhetoric about terrorism to disguise the nonsensical nature of Counts I and III.  Count I alleges that Hodzic and his codefendants conspired, in violation of section 2339A, to prepare for a conspiracy to violate section 956(a); that is, that defendants agreed to prepare for a second agreement.[26]  Count III alleges that defendants provided material support in preparation for the conspiracy to violate section 956(a).[27]  In sum, Count I accuses defendants of committing an inchoate offense the object of which was preparation for a second inchoate offense.  Count III accuses defendants of providing material and supplies

---

[23]  *See* United States v. Huggins, 650 F.3d 1210, 1217 (8th Cir. 2011);
[24]  *See United States v. Helmel,* 769 F.3d 1206, 1322 (8th Cir. 1985).
[25]  *United States v. Panarella,* 277 F.3d 678, 685 (3rd Cir. 2002).
[26]  *See* Indictment at 4-5.
[27]  *See id.* at 17.

to prepare for the commission of an inchoate offense. On their face, these two counts strain the limits of language to say nothing of the law.[28]

By making one conspiracy the object of another and preparation for that conspiracy the object of a substantive offense, the indictment imparts "criminal liability to acts so removed from the ultimate offense as to qualify as mere preparation—that is, acts to which a court cannot impute a fully formed intent."[29] The indictment's focus on conduct so removed from the completed offense and its rhetoric about supporting terrorism only demonizes the defendants as dangerous without setting forth the conduct that would allow this court to find that they intended to murder or maim anyone in a foreign country.[30] Especially in light of the indictment's failure to allege the mens rea element of the two section 2339A offenses and the failure to provide sufficient information to allow defendants to prepare a defense to the section 956(a) conspiracies, this Court should dismiss Counts I and III under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.

**III.  This Court should dismiss Counts I and III under Fed. R. Crim. P 12(b) because the indictment fails to allege that Hodzic intended to aid "an act that would constitute the offense of murder, . . . or maiming."**

To prove a section 2339A(a) violation, the government must provide that the defendant intended or knew that the material support he provided will be used

---

[28]  *See Wilson v. State,* 53 Ga. 205 (1874) (noting logical absurdity of one inchoate offense having another as its object, which would be like "conceiving of the beginning of eternity or the starting point of infinity.")

[29]  Ira P. Robbins, *Double Inchoate Offenses,* 26 Harv. J. on Legis. 1, 65 (1989). This problem is especially acute for defendants given the indictment's failure to allege the intent required for violation of 18 U.S.C. § 956(a). *See* pages _____, *infra.*

[30]  *See* Robbins at 35 n.148.

for the specific violent offense the indictment has selection from section 2339A(a)'s catalog. In *United States v. Stewart,* the Second Circuit held that the government must provide that defendant provided support or resources "*with the knowledge or intent* that such resources be used to commit specific violent crimes."[31] Thus to prove the allegations in Counts I and III, the government will be required to prove that Hodzic intended the commission of acts that would constitute murder or maiming.[32] Section 2339A(a)'s mental state extends beyond the support provided to the underlying purpose for which the support is allegedly provided.[33]

Nothing in the indictment specifically alleges that Hodzic intended his support to aid murder or maiming. Instead, the indictment alleges generally that Hodzic knew that Pazara was fighting as a soldier in Syria, Iraq, and elsewhere. As noted above, there is nothing in indictment to suggest that Hodzic intended anything beyond aiding Pazara's life as a soldier with some additional assistance intended for fellow Bosnians who were fighting alongside Pazara. Aiding Pazara in no sense demonstrates an intent to commit murder or maiming. Accordingly, the indictment fails to state an offense under section 2339A because it fails to provide a basis for establishing an intent to murder and maim.

**IV. The indictment's failure to correctly allege section 2339A(a)'s mens rea is not only inconsistent with the statute, it violates the Constitution.**

---

[31]   590 F.3d 93, 113 (2nd Cir. 2009).
[32]   *See United States v. Hassoun,* 476 F.3d 1181, 1188 (11th Cir. 2007); *United States v. Abdi,* 498 F. Supp. 2d 1048, 1058 (S.D. Ohio 2007).
[33]   *See Stewart,* 590 F.3d at 113.

The indictment alleges only that defendants intended to support Pazara with money and material, offering nothing to establish that the defendants intended for Pazara to murder or maim.  In essence, the charges as outlined in the indictment would permit the government to obtain a conviction on Counts I and III simply by proving that defendants knowingly and intentionally provided money and supplies to Pazara.  Under this theory of prosecution, intentional contributions to Pazara render the defendants strictly liable for any crimes that Pazara may have committed that match one of section 2339A's catalog of violence.

As all co-defendants have argued in their motions to dismiss and memoranda in support, section 2339A does not permit this theory of prosecution.[34]  If permitted, this theory invites arbitrary enforcement of section 2339A because it would then fail to particularly describe the conduct sufficient to prove a violation.  The theory renders the statute standardless and unconstitutionally vague as applied.[35]

**V.     In failing to inform who was to be the target of the conspiracy to murder and maim as well the location, timing, and nature of the harm to be inflicted, Count II fails to satisfy Fed. R. Crim. P 7 and 12.**

Count II, alleging a violation of 18 U.S.C. § 956(a), relies on the rhetoric of terrorism to substitute for the plain, concise, definite written statement of essen-

---

[34]     *See* Defendant Sedina Hodzic's Memorandum of Law in Support of Motion to Dismiss at 6-11; Memorandum of Law in Support of Defendant Rosic's Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) at 10-11; Defendant Mediha Salkicevic's Memorandum in Support of Motion ti Dismiss the Indictment at 8-9; Memorandum of Law in Support of Defendant Harcevic's Motion to Dismiss Counts I and III at 8-15.

[35]     *See Holder v. Humanitarian Law Project,* 561 U.S. 1, 31 (2010); *Kolendar v. Lawson,* 461 U.S. 352, 362 (1983); *US v. Awan,* 459 F. Supp. 2nd 167, 179 (E.D.N.Y. 2006).

tial facts need to state an offense and satisfy Fed. R. Crim. P. 7(c).  The indictment fails to reveal who was targeted by the alleged conspiracy to murder and maim and nowhere discloses when and where this murder and maiming was to occur or how it was to be performed.

Section 956(a) incorporates the definition of murder from 18 U.S.C. § 1111.  It requires proof of the unlawful killing of a human being with malice aforethought and an intent to murder.[36]  But instead of information about who was to be murdered or maimed or when or where these acts were to be accomplished, the information merely alleges rhetorically that Hodzic intended to support Pazara and other, unidentified individuals "who were fighting in Syria, Iraq, and elsewhere in support of the designated FTOs."[37]  Not surprisingly, the indictment never defines what it means by the term "fighting."  It's as if the repeated references to "FTOs" will somehow satisfy Rule 7(c).  If by "fighting" the indictment refers to the civil war chaos that raged in Syria and Iraq in 2013 and 2014 and that continues to defy solution, either military or political, then the indictment's deficiencies deepen.

Soldiers who kill enemy combatants do not commit "murder" as section 1111 defines that term.[38]  If the grand jury in this case had no more definition of "fighting" than appears in the indictment, it is almost certain that it indicted Hodzic for conduct that fails to qualify as "murder."  When a grand jury's indictment for a

---

[36]  *See United States v. Chhun,* 744 F.3d 1110, 1117 (9th Cir. 2014); *Awan,* 459 F. Supp. 2nd at 175-76.
[37]  Indictment at 5, ¶5; 6, ¶¶6, 8; 7, ¶¶9, 10, 11; 10, ¶¶21, 24; 12, ¶¶33, 34; 13, ¶38; 14, ¶¶43, 44; 15, ¶¶45, 46, 47.
[38]  *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.2.

conspiracy to murder derives from undefined alternative theories of prosecution, the indictment must be dismissed.[39] An indictment for conspiracy to murder must specifically allege the single theory of prosecution.[40]

**Conclusion**

For the reasons stated in his motion to dismiss and in this memorandum, Defendant Ramiz Hodzic respectfully requests that the Court dismiss the indictment.

Dated December 8, 2015

Respectfully submitted,

/s/Diane L. Dragan
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Diane_Dragan@fd.org
Attorney for Defendant Hodzic

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Matthew Drake.

/s/Diane L. Dragan

---

[39] *See Awan,* 459 F. Supp. 2nd 175-76.
[40] *See id.*