UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
      v.                       ) No. 4:15-CR-49-CDP
                               )
JASMINKA RAMIC,                )
                               )
                Defendant.     )


SENTENCING HEARING

BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

JANUARY 5, 2016


APPEARANCES:

For Plaintiff:       Matthew Drake, AUSA
                     Howard J. Marcus, AUSA
                     **OFFICE OF U.S. ATTORNEY**
                     111 South Tenth Street, 20th Floor
                     St. Louis, MO  63102

                     Mara M. Kohn, AUSA
                     Joshua D. Champagne, AUSA
                     **U.S. DEPARTMENT OF JUSTICE**
                     950 Pennsylvania Avenue, N.W.
                     Washington, DC 20530

For Defendant:       J. Christian Goeke, Esq.
                     **LAW OFFICES OF J. CHRISTIAN GOEKE, P.C.**
                     7711 Bonhomme Avenue, Suite 850
                     Clayton, MO  63105


*REPORTED BY:         Gayle D. Madden, CSR, RDR, CRR*
*                     Official Court Reporter*
*                     United States District Court*
*                     111 South Tenth Street, Third Floor*
*                     St. Louis, MO  63102      (314) 244-7987*
          (Produced by computer-aided mechanical stenography.)

1      (Proceedings commenced at 2:03 p.m.)

2      (The following proceedings were held in open court and

3   with the Defendant present.)

4          THE COURT:  All right.  We are here in the case of

5   United States of America versus Jasminka Ramic, Case No.

6   4:15-CR-49.  Ms. Ramic, would you step forward?

7          We do have an interpreter here.  I'm not sure how

8   much we will use her today, but I will ask the clerk to swear

9   the interpreter at this time.

10     (Interpreter Belma Salesevic sworn to interpret Bosnian

11   into English and English into Bosnian.)

12         THE COURT:  All right.  Thank you.

13         We are here for sentencing, and the Defendant is here

14   in person and with her attorney, Mr. Goeke, and the United

15   States is here through Mr. Drake.

16         Mr. Goeke, is -- what's your expectation?  Do we need

17   to use this -- does your client wish to use the interpreter?

18         MR. GOEKE:  Your Honor, if the Court will recall, I

19   had an interpreter at the plea because of some of the

20   technicalities.  I wanted to make sure, if there was some

21   misunderstanding, my client fully understood.  I've never

22   needed an interpreter when I've met with her.  I just spoke

23   with her, and she's comfortable not having the interpreter

24   interpret word-for-word what goes on this afternoon.  If

25   there's something she does not understand, she'll let me know

1  and then I can let the Court know maybe she needs an

2  interpretation if that would be okay with the Court.

3          THE COURT:  That's fine with me.

4          So, Ms. Ramic, is that okay with you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  If you need the services of

7  the interpreter or if you don't understand anything I'm

8  saying, please let me know.  She's right here, and we can use

9  her if we need to, but if you tell me you do not need her,

10  then we'll go ahead and speak English.  Is that okay?

11          THE DEFENDANT:  Thank you, Your Honor.

12          THE COURT:  Okay.  All right.  So both parties did

13  file sentencing memoranda, and I have reviewed them, but there

14  are not -- neither side had any actual objections to the

15  Presentence Report.  Is that correct?

16          MR. GOEKE:  For the Defendant, that is correct, Your

17  Honor.

18          MR. DRAKE:  For the Government, that's also correct,

19  Your Honor.  Thank you.

20          THE COURT:  Okay.  So, Ms. Ramic, did you have a

21  chance to go over the Presentence Report and discuss it with

22  your lawyer?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Was there anything in that report that

25  you wanted him to object to that hasn't been resolved?

4

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  All right.  Then I will adopt the

3   Presentence Report as my findings of fact and my legal

4   conclusions about the advisory Guidelines.  As you all know,

5   it does conclude that the advisory Guidelines, if it were not

6   for the statutory maximum, would be far above the statutory

7   maximum.  So the maximum in this case is 60 months or five

8   years in jail.  The Guidelines would be 30 years.  So it's a

9   huge difference, but nevertheless, the Guidelines are 60

10  months.  That's the range under the advisory Guidelines

11  because of the statutory maximum.

12          So with that said, Mr. Goeke, I would ask you to make

13  any statements on your client's behalf you would like, and

14  then, of course, I'll give her a chance to say anything she

15  wants.

16          MR. GOEKE:  Thank you, Your Honor.  I'll try to be

17  brief.  I know the Court reviewed the sentencing memorandum

18  and the other documentations and exhibits that were attached

19  thereto that I filed last month, but I'd like to -- I think

20  it's important to reiterate some of the background that brings

21  my client before the Court today.  As I set out in my

22  sentencing memorandum -- and I don't think there's any

23  argument from the Government on this point -- Ms. Ramic is not

24  a terrorist.  She's not here because she is being accused of

25  being a terrorist.  What she is is a political refugee from

1    Bosnia who sought asylum in the United States in 2000.  She's

2    the mother of two teenaged children.  She's a wife.  She's

3    also a Muslim women who's been a contributing member of the

4    Christian Broadcasting Network 700 Club since 2008 and has had

5    a long history of humanitarian involvement, especially

6    revolving around children.

7            What really brings Ms. Ramic before the Court this

8    afternoon is a military chemical attack launched by the Syrian

9    government against Muslim citizens in August of 2013.  Given

10   her background and her long-term involvement in the

11   humanitarian aid for children especially, what she saw as a

12   result of the news clips and releases involving that attack

13   were 1,300 or so people that were killed, many of them

14   children, and hundreds of more children that were suffering as

15   a result of the side effects of the poison gas.

16           At that point, Ms. Ramic made a decision that she

17   wanted to do something to try to help those people, and I

18   think that's exacerbated by what she went through when she was

19   in the middle of the Bosnia conflict when she was a young

20   child and the atrocities that she witnesses and endured.  In

21   doing so, she got onto Facebook, and she had connected with a

22   person by the name of Ramo Pazara, who was a childhood friend

23   or acquaintance from her hometown in Bosnia.  Mr. Pazara was

24   over in Syria, and she offered to help him, assist him in his

25   endeavors there.

1            At that time, around the time of her first payment

2     that she made -- well, back up for a second.  As the Court's

3     aware, she made some payments totaling $700 towards somebody

4     in St. Louis that was forwarded to Mr. Pazara at Mr. Pazara's

5     request.  When she made that first payment, around that time,

6     what was also being -- what was in part being shown on

7     Mr. Pazara's Facebook were pictures of orphans that he was

8     helping, holding baskets of food and bread and other items

9     that were being provided to assist them with their needs, and

10    based upon that, Ms. Ramic decided to go forward and try to

11    provide some assistance to Mr. Pazara and his group.

12            We don't dispute that as this went on things got more

13    complicated.  She got in over her head, and she did become

14    aware that there was combat and that Mr. Pazara was involved

15    in that combat and part of what was being sent over along with

16    what she contributed included items that contributed towards

17    that combat, and that's why she's before the Court here today,

18    Your Honor.

19            I think it's clear that Ms. Ramic got involved in

20    this for what were initially altruistic reasons, and that was

21    to provide humanitarian aid to the people that she saw on the

22    news clips over in Syria.  She ultimately made some very, very

23    poor decisions and engaged in some questionable activities

24    that technically violated the statutes that constitute the

25    criminal conduct for which she pled guilty and is before the

1  Court today for sentencing.

2          I did not reply to the Government's sentencing

3  memorandum, but there's a couple points I would like to make

4  if I may, Your Honor.

5          THE COURT:  Yes, you may.

6          MR. GOEKE:  I believe that the Government's

7  sentencing memorandum paints an overall picture of the

8  conspiracy over a lengthy part of time, which in large part

9  Ms. Ramic was not a part of or even aware of.

10          I don't want to overly minimize the scope of this

11  conspiracy nor the consequences of the terrorist acts that

12  certainly escalated over the course of the conspiracy, but

13  Ms. Ramic's role, as set out in the Plea Agreement, was

14  minimal and has been described on occasions as being

15  diminutive.

16          I know the Court's made reference that -- the fact

17  that the statutory maximum is only -- only five years.  I say

18  only five years to Ms. Ramic.  That's a lot, but it's five

19  years compared to what it would be under the Guidelines.  She

20  really doesn't get any -- under the Guideline calculation,

21  she's really not getting any benefit because of her minimal

22  role in this case.

23          Although the indictment charges that the conspiracy

24  existed from May of 2013 to February 2015, I believe the

25  evidence shows that Ms. Ramic cut off her contact altogether

1   with the conspiracy in February or March of 2014.

2          And I would like to also point out to the Court that

3   the Government's memo also describes more recent al Qaeda and

4   ISIS terrorist attacks, including the recent attacks in Paris

5   and the downing of a Russian commercial plane.  I think it's

6   important to view the severity of Ms. Ramic's actions through

7   what her understanding the belief was as to what, if any,

8   threat Pazara and his group posed and the extent to which

9   their activities would escalate in that regard and, again,

10  with regard to what the media has -- to what ISIS has done,

11  quite frankly.  I mean it's escalated.  It's inflammatory.

12  The name al Qaeda, the name ISIS is an inflammatory term

13  that -- as it should be.  But at the time that Ms. Ramic was

14  involved in these activities, it was not that inflammatory.

15  And I believe it's unfair to conclude that Jasminka had any

16  reason to believe otherwise.

17         Given her experiences during the Bosnian-Serbia

18  conflict as set out in the PSR, our sentencing memorandum, and

19  even the Government's sentencing memorandum, I believe this

20  goes a long way in understanding Ms. Ramic's true motives and

21  why she did what she did.

22         Finally, it was brought to my attention this morning

23  by Ms. Ramic that her children are in Germany with her husband

24  on visas, where she was at the time that she was arrested and

25  extradited, which she did waive extradition on this case to

1   come back to the United States and face these charges, and

2   it's come to my attention -- and I know she's had an

3   immigration attorney in Germany working on her situation with

4   regard to what the ramifications of this conviction will have

5   on her ability to return to her family in Germany.

6          But I was made aware -- and I've had some contact

7   with that German attorney, Your Honor, but I've had trouble

8   communicating with him.  Ms. Ramic informs me this morning

9   that she had a conversation with her husband over the weekend

10  by phone in which he had spoken with the attorney and that one

11  of the collateral consequences if she does in fact receive

12  prison time in this case would be that her children's visas

13  may very well be canceled and to be forced with her husband to

14  come back to the United States and leave the life that they

15  had formed over in Germany.  The reason she went to Germany to

16  begin with was to be closer to his family and also be closer

17  to her elderly parents that reside in Bosnia.  So I'd ask the

18  Court to take that into consideration as well.

19          THE COURT:  Let me -- I know that the Defendant is a

20  United States citizen.  Are her children and husband citizens

21  of the U.S.?

22          MR. GOEKE:  They are, Your Honor.

23          THE COURT:  Okay.

24          MR. GOEKE:  And the issue -- I understand that --

25  obviously, I'm not saying coming back -- I'm not alluding to

1 the fact that their having to come back to the United States

2 would be a terrible thing, but it would be a hardship given

3 the reasons why and what they've done to be able to relocate

4 to Germany and get the children in school.  The husband has a

5 job there, and --

6          THE COURT:  And that's where his family is?

7          MR. GOEKE:  That's where his family is, yes, Your

8 Honor.  And for those reasons, Your Honor, I'd ask you to

9 consider a sentence in this case of time served along with a

10 supervised release condition that Ms. Ramic serve some time on

11 house arrest on supervised release.  That would accomplish her

12 not being sentenced to prison, which as I'm being led to

13 believe would be the catalyst that could kick in the potential

14 voiding of the -- of the visas that her children and her

15 husband are currently in Germany on, and it also may have some

16 bearing on whether or not she'll be allowed to return to

17 Germany once she's released from supervised release eventually

18 in this case.

19          THE COURT:  Okay.  Ms. Ramic, do you wish to make any

20 statements to me before I impose sentence?  It's your right to

21 do so, and this is your opportunity.

22          THE DEFENDANT:  Your Honor, I'd just like to ask to

23 trust me.  I did make mistake, and I am -- I mean how I say --

24 I admit that I did something, what I'm not supposed to do, but

25 I will give my -- I mean I'm giving my oath because I am

1    honest that I will do my best to complete all stipulations

2    placed by Court and follow the law.  Thank you.

3           THE COURT:  Mr. Drake, on behalf of the United

4    States, do you wish to make any statements?

5           MR. DRAKE:  Just very briefly, Your Honor.  Thank

6    you.

7           Your Honor, I largely do not disagree with the

8    factual synopsis that Mr. Goeke provided.  All of that

9    background concerning the Defendant and her personal and

10   family circumstances, I believe, is accurate and correct.

11          I will say this, Judge.  The Government is very

12   cognizant of the Defendant's background, very cognizant of her

13   role in the offense and took all of that into consideration in

14   considering the fact that a superseding information would be

15   filed as well as agreeing to a role-in-the-offense reduction,

16   and so as we stand here today compared to the original

17   indictment that was levied in the case, she has received a

18   significant consideration from the Government in that regard.

19          And I think it bears stating that while that is a

20   significant concession on the Government's part, an exercise

21   of discretion, this is still a very serious offense.  Frankly,

22   the Government feels that a Guideline sentence would be

23   appropriate.

24          It is true that even if or it may be true that even

25   if the Defendant's initial motivations or intent were very

1    altruistic, I think it bears noting for the Court that she was

2    certainly aware of what Mr. Pazara was doing in Syria.  As is

3    stated in the Plea Agreement, she was told by Mr. Hodzic, a

4    Codefendant in the original case, as well as Mr. Pazara that

5    they were engaged in activities in which people were dying;

6    people were being martyred; they were in the battlefield

7    fighting.  So as a result of support and actions of others,

8    the Defendants, including Ms. Ramic, knew that people were

9    being killed.  She specifically made reference to some of the

10   terrorist organizations that were operating in the region.

11          THE COURT:  Yeah, I mean the -- one of -- there's no

12   dispute she did say in some email or posting or some

13   communication to Mr. Pazara, "Are you fighting with al-Nusra

14   or some of these other groups?"  Right?

15          MR. DRAKE:  Yes, Your Honor.  And in response,

16   Mr. Pazara replied, "Well, I am, but all of those units -- all

17   of those brigades have been united under the Islamic State."

18   And while I agree with Mr. Goeke that the Islamic State has

19   certainly continued to evolve and become more and more

20   violent, Mr. Pazara was not bashful about his exploits and his

21   posts on Facebook about the activities he was engaged in -- in

22   combat, in armed conflict, in fighting, and things like that.

23          And while the Defendant -- I do understand the

24   position that her motivations were in part to help women and

25   children and were altruistic.  She was also well aware of what

1   Mr. Pazara was doing.  In fact, she even made references to

2   the fact that their communications could be deleted so that

3   other people would not be able to see them.  And -- and

4   Mr. Hodzic, for instance, sent her pictures of the military

5   uniforms that he was sending over to Mr. Pazara in part with

6   the money that he was able to obtain from Ms. Ramic.

7          So my point, Judge, is not to belabor the point but

8   at least to point out to the Court that this is a very serious

9   offense, and the Defendant has gotten a substantial concession

10  or consideration from the Government.

11         I would also point out that it is true that

12  Ms. Ramic's last communications with Mr. Pazara directly

13  ceased in February of 2015 -- 2015; however --

14         THE COURT:  '14.

15         MR. DRAKE:  Or '14.  Yeah.  I'm sorry.  Excuse me.

16         THE COURT:  She was already arrested in 2015, right?

17         MR. DRAKE:  Correct.  She did -- she was --

18  Mr. Hodzic is the one who informed her of Mr. Pazara's death

19  when he died on the battlefield in September of 2014, and I

20  think that part of that may be that, as was evident from

21  Mr. Pazara's Facebook page, his exploits continued to grow

22  more and more extreme, and Ms. Ramic was aware of what he was

23  doing and was aware of the support that she had provided to

24  him.

25         For those reasons, Judge, that's why the Government

1  thinks that a Guideline sentence would be appropriate.  Again,

2  I'm not trying to belabor the point or disagree with Mr. Goeke

3  on the facts.  He's right, but I think it bears consideration

4  from the Court in terms of the seriousness of the offense and

5  what's at stake here.  Certainly, there are more Defendants

6  that are more culpable, and that's already been addressed, but

7  that's why we're asking for a Guideline sentence, Judge.

8          MR. GOEKE:  If I may briefly, Your Honor.

9          THE COURT:  Yes.

10         MR. GOEKE:  Just in response.  And I don't disagree

11 that Ms. Ramic received a communication from Mr. Hodzic in

12 September of 2014; however, I don't believe there's any

13 evidence there was any communication between she and anybody

14 in the conspiracy between February of 2014 and September 2014

15 when he just advised her, because he had her on his email or

16 Facebook page, what had happened to Pazara, and if you take a

17 look at what Ms. --

18         THE COURT:  Well, she sent the money in '13, right?

19         MR. GOEKE:  And I was going to -- Ms. Ramic's

20 relevant conduct in this case, Your Honor, consists of a

21 period from August 20th, 2013 to December 23rd, 2013.  She

22 made three payments totaling $700 along with first aid

23 supplies and hot chocolate, which she sent to Mr. Hodzic in

24 St. Louis at the direction of Mr. Pazara to be then forwarded

25 over to Syria to Mr. Pazara.

1          And with regard to how the pages or how the violence

2    escalated on Mr. Pazara's Facebook page or website or whatever

3    he had set up, I don't think there's any indication how much

4    of that, if any, Ms. Ramic saw after she sent the last payment

5    in December of 2013.

6          MR. DRAKE:  Your Honor, I would agree with Mr. Goeke

7    that the payments took place from September 30th of 2013 with

8    the last one being on December 23rd of 2013, and I would also

9    agree with him mostly her communications with Mr. Hodzic, I

10   believe, ceased in March of 2014.  He is correct that there

11   were no other communications with other members of the

12   conspiracy after that as far as the Government is aware, and I

13   do believe that she did not have contact with Mr. Hodzic or

14   Mr. Pazara after that date.

15         MR. GOEKE:  And just to clarify, I believe the

16   evidence shows that the only people she did actually have

17   communication with or contact with was Roma Pazara and

18   Mr. Hodzic.

19         MR. DRAKE:  That's correct, Judge.

20         THE COURT:  Okay.  Those were the two.

21         Okay.  Anything further?

22         So here's what I am going to do.  I am going to vary

23   slightly from the Guidelines and give you a slightly lower

24   sentence, but I'm not going to do as your lawyer asks,

25   Ms. Ramic.  I am going to sentence you to three years in jail.

1   Obviously, you'll get credit for the time you've already been

2   in custody.  Three -- 36 months is -- it's two years off of

3   the Guidelines range of 60 months or five years.  I think

4   under all of the circumstances of your case that this is

5   sufficient but not greater than necessary to meet the

6   sentencing objectives set out in the statute, and I

7   specifically am basing my variance on a variety of factors.

8   I've considered the Guidelines, of course, as well as the

9   statutory, you know, maximum and the nature of the charge that

10  you pleaded guilty to as opposed to the one you were initially

11  charged with.

12          This was a conspiracy where you did provide material

13  support or provided money that supported Mr. Pazara, and the

14  evidence, as set out in the Presentence Report and as detailed

15  in the -- in the Government's sentencing memorandum, shows

16  that, you know, you sent him this money after you knew that he

17  was fighting with a terrorist group, that you did make

18  reference to deleting the communications, that there was --

19  you know, that your references were to supporting the brothers

20  and him, and although, obviously, in 2013, when you took these

21  actions, ISIS had not engaged in some of the things that we

22  now know from the news that it's engaging in, nevertheless, it

23  was -- Mr. Pazara and whoever he was fighting with, which your

24  conversations indicated you knew it was, you know, an

25  organized group that was fighting, were engaged in violent

1    activities and killing people and -- and some being killed,

2    and there was evidence that you knew about all of this.

3              So although I understand your motives to initially

4    get involved in this may have been because of your concern for

5    the innocent children and other people who were killed in the

6    poison gas incident, your continuing in the actions you took

7    show that you are guilty of this crime and that it's a very

8    serious crime.

9              And so I think a sentence of three years in jail is

10   appropriate because it's necessary to reflect the seriousness

11   of the crime and provide appropriate punishment.  Also, it's

12   necessary to provide deterrence to you and others, to show

13   people that this is a serious crime.  It's not just a -- you

14   know, it's not just something minor.  Obviously, you know, I'm

15   not going to say -- I understand the point about this

16   Defendant not being a terrorist.  I mean she's not taken up

17   arms.  She's not done anything like that, but she's been

18   involved in this conspiracy, and -- and it is serious.

19             I am sorry if this will have consequences for your

20   children and husband who -- who prefer to live in Germany.  I

21   don't know what the consequences will be, and I don't,

22   obviously, have any say over what any kind of immigration

23   people -- I don't even have any say over what immigration

24   people in the United States do, much less in Germany, but I

25   will note that criminal acts, whether it's the normal, you

1    know, drug dealing or identity theft type things that we deal

2    with all the time in this court, do have consequences for

3    family members, and it is sad.  It is too bad, but we've had a

4    lot worse consequences to people.  People often lose their

5    children to foster care.  Very often, children are forced to

6    move to foreign countries from the United States.  So it's not

7    really anything unusual that your children might have

8    consequences.  I hope they don't.  I hope it works out so that

9    they can stay wherever they wish to stay, but I cannot give

10   you a lesser sentence on that basis.  I do not believe it's

11   appropriate when you consider all the facts of the case and

12   the crime that you committed.

13        I have considered, as I said, all of the factors in

14   this, in the -- the factors set out in the sentencing statute

15   and believe that this is the appropriate sentence when all of

16   those factors are considered.

17        In varying downward, I have also considered -- so

18   it's clear -- the personal hardships and suffering that the

19   Defendant has undergone in her life, both in being a refugee

20   and the various things that have happened to her both during

21   the war and afterward in her home country and the consequent

22   mental health conditions and effects on her, and I realize

23   those are serious things, and her health and mental health

24   issues are something that I've taken into consideration.

25   That's part of why I'm giving her a sentence lower than the

1   five years in jail because she did suffer during the Bosnian

2   conflict and she continued to suffer when she attempted to

3   move back to Bosnia after that conflict was over, and so, you

4   know, those are the reasons she came to the United States, and

5   I'm not -- I'm not discounting the seriousness of those, but I

6   still think that the crime in this case does require a serious

7   sentence and three years in jail meets that, is sufficient to

8   meet that -- reflect the seriousness.

9            So it is the Judgment of the Court that the Defendant

10  is hereby committed to the custody of the Bureau of Prisons to

11  be imprisoned for a term of 36 months.

12           Upon release from imprisonment, the Defendant will be

13  placed on supervised release for a term of three years.

14           Within 72 hours of release, the Defendant shall

15  report in person to the Probation Office in the district to

16  which she is released.

17           While on supervision, the Defendant must comply with

18  the standard conditions that have been adopted by the Court

19  and with the following additional conditions, and if any of

20  these conditions have costs, then the Defendant must pay the

21  costs of the services based on a copayment fee established by

22  the Probation Office.

23           Excuse me.

24           The Defendant must submit her person, residence,

25  office, computer, or vehicle to a search conducted by the

1    Probation Office based upon reasonable suspicion of contraband

2    or evidence of a violation of a condition of release, and she

3    must warn any other residents of her premises about this

4    condition, and I impose that condition specifically because of

5    the nature of this offense and the fact that much of the crime

6    was committed from her home and her computer or facilitated by

7    the computer.

8            Additionally, I will -- as a condition of

9    supervision, the Defendant must participate in a mental health

10   evaluation and follow any recommendations of the evaluator

11   and/or participate in a mental health program approved by the

12   Probation Office.

13           The -- additionally, the Defendant must provide the

14   Probation Office with access to any requested financial

15   information, and this relates to the nature of the crime.

16           Based on the low risk that the Defendant poses for

17   future substance abuse, I will suspend the mandatory statutory

18   drug testing requirements.

19           I find that the Defendant does not have the ability

20   to pay a fine, and, therefore, no fine is imposed.  It is

21   ordered, however, that the Defendant must pay to the United

22   States a special assessment of $100, and that is due

23   immediately.

24           So this will be the sentence in the case, and I have

25   stated my reasons for it.  Ms. Ramic, if you wish to appeal

1   from this sentence, any appeal by you must be filed within 14

2   days of today's date.  If you do not file a Notice of Appeal

3   within 14 days, you'll be forever giving up your right to do

4   so.  You are entitled to be represented by an attorney in

5   taking an appeal, and if you can't afford one, an attorney

6   will be appointed to represent you at no cost, and if you

7   request, the Clerk of Court will assist you in filing a Notice

8   of Appeal.

9            The United States also has the right to appeal this

10  sentence.

11           Probation suggested that I might recommend to the

12  Bureau of Prisons that the Defendant be evaluated for mental

13  health treatment while in the bureau.  Do you want me to make

14  that recommendation?

15           MR. GOEKE:  Yes, please, Your Honor.

16           THE COURT:  And do you want me to make any other

17  recommendations to the Bureau of Prisons?

18           MR. GOEKE:  Yes, Your Honor.  I'd request that the

19  Court make a recommendation that Ms. Ramic serve her sentence

20  in a facility as close to Rockford, Illinois, as possible.

21           THE COURT:  Do they still have women in Peoria?

22           MR. GOEKE:  I don't know.

23           THE COURT:  I don't know either.  I don't know what

24  the -- I don't know where the Bureau of Prisons will put you,

25  Ms. Ramic, but I will recommend to them that they house you as

1/5/2016

22

1   close to your home as Rockford -- in Rockford, Illinois, as

2   meets their regulations.  They usually do try to follow that,

3   but if they don't, there's nothing I can do about that.  Do

4   you understand?

5            THE DEFENDANT:  Thank you, Your Honor.

6            THE COURT:  All right.  I will make that

7   recommendation.

8            Anything further from the Government?

9            MR. DRAKE:  Yes, Judge.  As part of the original

10   agreement, the Government agreed to move for the dismissal of

11   Counts I and III as to this Defendant in the original

12   indictment, and I would do so at this time.

13            THE COURT:  Counts I and III of the original

14   indictment are dismissed at this time as to this Defendant.

15            Is there -- was there a forfeiture in this case?

16            Not as to this Defendant?

17            MR. DRAKE:  Not as to this Defendant, Judge.  Thank

18   you.

19            THE COURT:  Okay.  All right.  That's fine.

20            All right.  Then the Defendant then is remanded to

21   the custody of the Marshals for imposition of sentence.

22            MR. GOEKE:  Thank you, Your Honor.

23            THE COURT:  Court's in recess.

24       (Proceedings concluded at 2:32 p.m.)

25

<u>CERTIFICATE</u>

      I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

      I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

      I further certify that this transcript contains pages 1 through 22 inclusive.

      Dated at St. Louis, Missouri, this 21st day of August, 2016.


                                  _____

                                /s/ Gayle D. Madden

                          GAYLE D. MADDEN, CSR, RDR, CRR

                             Official Court Reporter