**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  |  |  |
| Plaintiff, | ) | No. 4:15-cr-00049 CDP/DDN |
|  |  |  |
| v. | ) |  |
|  |  |  |
| ARMIN HARCEVIC, | ) |  |
|  |  |  |
| Defendant. | ) |  |

**DEFENDANT HARCEVIC'S**
**SECOND SENTENCING MEMORANDUM**

Defendant Armin Harcevic ("Mr. Harcevic") through counsel, respectfully submits this Second Sentencing Memorandum in connection with his sentencing by the Court on August 9th, 2019. Mr. Harcevic previously filed a Sentencing Memorandum on [date] and the Court has given until August 2nd , 2019 to file additional sentencing memoranda.

On February 25, 2019, Mr. Harcevic pled guilty before this Honorable Court to one count of Conspiracy to Provide Material Support to Terrorists, in violation of 18 USC § 2339A and one count of Providing Material Support to Terrorists in violation of 18 USC § 2339A. Mr. Harcevic accepts full responsibility for his actions, and through this memorandum seeks to address significant government assertions which mischaracterize Mr. Harcevic's conduct. In support of this memorandum, the defendant notes that the Probation Office issued a revised Final PSR on July 31st, 2019, which contains only one donation of $1,500 from Mr. Harcevic to Hodzic on

1

September 24th, 2013. The Government's allegations of further money ever being given to Hodzic or Pazara are correctly excluded from the revised Final PSR's list of "transactions that occurred during the conspiracy" as they are unsubstantiated and do not meet the preponderance of the evidence standard required. The defense also offers further information on the $800 transfer to Turkey that is noted in the Final PSR. Far from the individual being unknown, it is clear that the person Mr. Harcevic transferred the $800 to is known and is known not to be any of the people in Turkey connected to the investigation in this case. Finally, we address this court's recent sentencing of co-defendant Mediha Medy Salkicevic in relationship to the issue of disparate sentences.

I.     <u>The Government's assertion that Mr. Harcevic was aware of Pazara's support for ISIS at the time he made his donation is unsubstantiated and mischaracterizes the evidence.</u>

Throughout the Government's Sentencing Memorandum, a constant and unsubstantiated connection is made between Pazara's intent and Mr. Harcevic's intent. While Mr. Harcevic is charged as part of the conspiracy to provide material support to Pazara, it is important to note that Mr. Harcevic did not have any direct communication with Pazara. In all of the conversations and evidence the government relies upon to establish Pazara's alleged support for ISIS, Pazara is speaking to Hodzic or others, never to Mr. Harcevic. The Government cites to a private Facebook conversation between Jasaveric and Pazara, in January, 2014, to show that Pazara was not part of the Free Syrian Army (FSA). (Gov. Exhibit 1, Trans 2953). This conversation happens four months after Mr. Harcevic's donation to Hodzic, and more importantly, it is a private conversation Mr. Harcevic did not have access to and could not have been aware of. The Government also cites to a private Facebook conversation between Hodzic and Salkicevic in August, 2013, stating that Pazara was fighting in Syria. (Gov. Exhibit 2, Trans 242). This is yet

2

another private conversation Mr. Harcevic was not party to or aware of, further, this conversation does not establish any ISIS support on Pazara's behalf, merely that Pazara was fighting with Bosnians and Chechens. Next, the Government cites another private communication, an email exchange between Pazara and Ramic on August 14th, 2013. Ramic, apparently as confused as the rest of the world at the time about the various groups and factions fighting in Syria against Al-Assad, asked which brigade Pazara was fighting for and listed five different groups. Here, Pazara privately tells Ramic that the groups have united into ISIS. Mr. Harcevic was not party to this conversation and was unaware of it. The Government cites a private conversation between Hodzic and one of Pazara's co-conspirators, "A.S.", where they discuss Pazara's activities. Again, Mr. Harcevic is not party to these private messages and was not aware of them. Finally, the Government cites another private Facebook conversation between Hodzic and "M.K.", a Pazara co-conspirator. Mr. Harcevic was not a party to this private conversation and was not aware of it. The Government provides no evidence to support their assertion that Mr. Harcevic was aware of Pazara's support for ISIS.

In determining whether the terrorism enhancement applies, the burden is on the government to show by a preponderance of the evidence that Mr. Harcevic had the "specific intent" to commit an offense that was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *United States v. Awan*, 607 F.3d 306, 317 (2nd Cir. 2010) citing 18 U.S.C. 2332b(g)(5)(A); cf. *United States v. Noble*, 246 F.3d 946, 953 (7th Cir. 2001), *United States v. Starks*, 309 F.3d 1017, 1026 (7th Cir. 2002), *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000) ("During sentencing, the Government must prove the facts underlying the base offense or an enhancement by a preponderance of the evidence."). The Government has not provided any evidence that Mr.

3

Harcevic had any intent other than to support paramilitary forces in their defense of the civilian population of Syria against unlawful attack by forces that were no longer recognized as legitimate by the United States.

> a. The Government's assertions that Mr. Harcevic's conduct was calculated to influence or affect the conduct of the Turkish, Syrian, Iraqi and American governments are unsubstantiated and based entirely on private conversations Mr. Harcevic was not party to.

The Government similarly relies on extensive private Facebook conversations between Pazara and "Person E", that Mr. Harcevic was not party to and was unaware of, to assert that Mr. Harcevic's offenses were calculated to influence or affect the conduct of the Syrian government, the Turkish government, the Iraqi government and the American government. (Doc. 568, p. 20). The Government does not provide any explanation for how they attempt to hold Mr. Harcevic responsible for such ambitious conduct and as such no weight should be given to this assertion. Mr. Harcevic cannot be held responsible for private conversations he was not a party to. The lengthy private conversations between Pazara and Person E (Gov. Exhibit 9) indeed provide extensive insight on Pazara's state of mind, but these were private messages Mr. Harcevic had no knowledge of, nor does the Government allege that he had any knowledge of such conversations. In fact, none of these private conversations is ever alleged by the Government to have been known to Mr. Harcevic. This is significant considering Mr. Harcevic's phone calls, text messages, emails and Facebook communications were all recorded or collected. Here, too, the Government fails to establish by a preponderance of the evidence that the terrorism enhancement should apply because none of the evidence provided can reflect upon Mr. Harcevic's knowledge or intent. They must prove that Mr. Harcevic had the specific intent to influence or affect these governments but have failed to show any evidence of Mr. Harcevic's intent specifically. Mr. Harcevic is a generous and compassionate man and has a significant and demonstrated history of

making charitable donations, especially for relief efforts. In September of 2013 the world was not sure who ISIS was yet, they were instead being flooded with news reports about chemical weapons attacks on Syrian civilians by Bashar Al-Assad[1], Barack Obama wanted to intervene against Bashar Al-Assad on the behalf of the Syrian people[2], the UN had just declared that sarin gas had been used in a war crime against Syrian civilians[3] and there were constant stories in the news about the humanitarian crisis in Syria[4]. These constant stories and the reporting of the situation in Syria in August and September of 2013 give the best impression of what Mr. Harcevic's state of mind and intent may have been at the time he donated the $1,500 to help Syrian civilians.

II.   <u>The Government mischaracterizes Mr. Harcevic and Hodzic's May 16th, 2014 conversation about the severe Bosnian flooding disaster and offers no evidence of a $500 transaction</u>

The Government alleges that based on a conversation between Mr. Harcevic and Hodzic on May 16th, 2014, that Hodzic transferred money to Pazara "which included the $500 Hodzic received from Defendant Harcevic" (Doc. 568, p. 24). The Government does not provide any

---

[1] "Obama asks for approval to hit Syria" CNN Breaking News. August 31st, 2013. Available at: https://web.archive.org/web/20130901023912/http:/www.cnn.com/

[2] Shoichet, Catherine E. "Strike against Syria? Obama backs it, but wants Congress to vote". CNN Online. August 31st, 2013.Available at: https://web.archive.org/web/20130901062229/http://www.cnn.com/2013/08/31/world/meast/syria-civil-war/index.html?hpt=hp_inthenews

[3] Levs, Josh. "War Crime: U.N. finds sarin used in Syria chemical weapons attack" CNN Politics. September 16th, 2013. Available at: https://web.archive.org/web/20130917114459/http://www.cnn.com/2013/09/16/politics/syria-civil-war/index.html?hpt=hp_inthenews

[4] Bradley, Megan. "Humanitarian crisis spilling from Syria". September 11th, 2013. Available at: https://web.archive.org/web/20130915065432/http:/www.cnn.com/2013/09/11/opinion/bradely-syria-refugees/index.html?iid=article_sidebar

evidence of such a transaction between Harcevic and Hodzic or that any such money was to be used for Pazara. What the Government supplies as evidence of this is a conversation where Mr. Harcevic and Hodzic are actually discussing the extreme flooding that occurred in Bosnia on that same day which left many homes without electricity, forced many to evacuate and stranded many cities and villages. The Bosnian government requested international assistance for this disaster[5]. What the Government omits from its citation of this conversation is that Mr. Harcevic, the extremely charitable and generous donor to relief efforts, begins this conversation asking Hodzic about his family in Bosnia: "How is your family over there in Bosnia? Is there anything by your family regarding this flooding?" (Gov. Exhibit 12, Trans 01096). Hodzic responds, "Well, there is. Every is (UI) flooded…we are a kilometer away from the water, you know, and there is a little hill. My [family] is well but the rest [of people] around are not…". They discuss praying for those suffering from the severe flooding in Bosnia. Mr. Harcevic then states, "Brothers should now, you know, step in regarding assistance, you know, a little of da'wah [Islamic missionary activities] and this- the brothers over there should be now helped a little with money if needed, you know, to go outside, to bring water, to bring bread—". Hodzic replies that he tried sending water and bread and that, "the ones by me over there transport it to Maglaj…". Maglaj is a town in Bosnia. Hodzic then says that the people there were well-off and donated 30,000 loaves of bread from a bakery but that there were many people in need in villages like Zepce and Maglaj. (Gov. Exhibit 12, Trans 01097). Hodzic says he will try to collect money and "send it to the *brothers* so that they can buy it and go distribute water, let—let  them buy food for children…" (emphasis added). Mr. Harcevic encourages this and Hodzic tells him, "If I am

---

[5] "16 May 2014: Serbia, Bosnia and Herzegovina—Severe weather/Floods". Relief Web Press Release. May 16th, 2014. Available at: https://reliefweb.int/map/serbia/16-may-2014-serbia-bosnia-and-herzegovina-severe-weatherfloods

6

tomorrow, you know, I have to send this to brothers tomorrow, God willing, and then I'll see, uh, that around Wednesday, Thursday or on Friday, uh, if I can send them something, but tomorrow I have to [send it] to the *brothers*, you know, the *brothers* called – they need it." (emphasis added). It is at this point the Government asserts that Hodzic and Mr. Harcevic are now talking about Pazara and fighters in Syria instead of the Bosnian flooding they were actually discussing which happened on the same day of the conversation. Mr. Harcevic is told about a wounded brother whose mother wishes to visit him and Mr. Harcevic says to send money for him. There is no evidence, the Government does not provide any, that Mr. Harcevic ever subsequently sends this alleged $500 to Hodzic. The PSR was correct to omit this alleged donation as well. The Government's intentional omission of the subject of the conversation relating to the Bosnian flooding disaster and occurring on the date of the same disaster is misleading and mischaracterizes this conversation between Mr. Harcevic and Mr. Hodzic. The term "brothers" is used to refer to men of the Muslim faith. They are clearly discussing "brothers" in Bosnia at the beginning of this in this conversation and accordingly it cannot be attributed to Mr. Harcevic that he would know that his donation would be used to support Pazara in combatant activities as opposed to support relief efforts in Bosnia, or at worst, supporting a mother to visit her son, neither of which would be terrorist activities. Given the ambiguity of the conversation and the absence of any proof of a further transfer the PSR was right to omit this as a subsequent transaction.

III.    <u>The Government's attempt to include an unconnected and irrelevant $800 transfer by Mr. Harcevic to an individual in Turkey, who was never connected to this case or investigation, is overzealous and unsubstantiated and was properly discarded by the Probation Office in their revised Final PSR.</u>

Beyond the $1,500 contributed by Armin Harcevic to Hodzic on September 24th, 2013, (PSR, para. 31, 39) that formed the basis for his plea before this court, the Government asserts in its

Sentencing Memorandum that Mr. Harcevic continued to contribute funds to Hodzic, and thereby to Pazara, to support his combatant activities in Syria through May of 2014 and that these funds totaled at least an additional $500. The Government relies on these assertions to argue against Mr. Harcevic's eligibility for a minor role in the offense sentencing reduction and to expand their basis from the effected governmental interest from the Assad regime to include the United States and Turkey. Mr. Harcevic denies that he gave additional monies to Hodzic or Pazara to further Pazara's combatant activities. The initial presentence investigation report (PSR) did not include any of these alleged contributions in its list of transactions related to the conspiracy. In the Final Presentence Report an $800 transaction from Mr. Harcevic was listed as being made both to Hodzic and to "Turkey". Upon defense counsel's request for the evidence relied on to support such a transaction, the Probation Office ultimately removed this transaction from its list of transactions related to the conspiracy. In its revised Final Presentence Report from July 31st, 2019, the $800 transaction is only mentioned later as a transfer that Mr. Harcevic sent to Turkey. The Probation Office's correction in their revised Final PSR clarifies that Mr. Harcevic only ever made one donation to Hodzic, the $1,500 on September 24th, 2013.

The note in the PSR that Mr. Harcevic gave additional money to Turkey during the conspiracy is based on a Western Union transfer of $800 by Mr. Harcevic to Mehmet Isaoglu on December 4th, 2013, in Gaziantep, Turkey. (PSR para. 39). While the Final PSR states that the recipient of the transfer is unknown, the Western Union wire transfer records produced by the Government provide the name of the recipient as Mehmet Isaoglu (See Western Union Transfer). The Government's vague reference to Mr. Harcevic contributing, "at least $2,000" (Doc. 568, p. 16), is an oblique acknowledgement that there is absolutely no evidence to support that this transfer

8

was in support of Pazara apart from the location of the recipient in Gaziantep. A critical omission made by the Government and the PSR is that the name of Mehmet Isaoglu and his listed address and phone number is not among any of the third party intermediary's names, contact numbers or addresses in Turkey identified by the investigating agents as associated with Ramiz Hodzic's to Pazara and his comrades. (See Search Warrant, STL 00004216). Further, unlike the $1,500 transfer, there are no emails or Facebook messages between Hodzic and Pazara, or anyone else discussing Mr. Harcevic's $800 transfer to an independent individual in Turkey.

The only connection between the transfer on December 4th, 2013, and transfers to Pazara is that Hodzic also mailed supplies to addresses in Gaziantep prior to and after December, 2013, but that is insufficient to establish the transfer was more likely than not for the benefit of Pazara and his comrades. Gaziantep is located in the western part of Turkey's Southeastern Anatolia region near the Syrian border and about 60 miles north of Aleppo, Syria with a population of approximately 1.3 million people in 2012, growing to almost 2 million in 2015. The growth was caused by the influx of refugees from the Syrian civil war into the city. Gaziantep has the highest concentration of refugees and provides humanitarian relief to around 440,000 Syrian refugees, accounting for 21% of the city's population.[6] In September and December of 2013, relief organizations all over America from Doctors Without Borders to Catholic Relief Services and Mercy were collecting donations to send support to Syrian refugees on the ground.[7] CNN and

---

[6] Syrian Refugees Recovery & Empowerment. A Brief History. 2019.
https://www.syrianrefugeeconference.com/call-of-abstract/
[7] "How to help Syrian Refugees". CNN Online. September, 2013.
https://web.archive.org/web/20130920011959/http://www.cnn.com/2013/09/06/world/iyw-how-to-help-syrian-refugees/index.html?iid=article_sidebar

other mainstream media outlets published information to donate to various charities supporting Syrian refugees. [8]

The number of Americans who sent money, in one form or another, to Gaziantep, Turkey, is countless. The Government has no basis for alleging Mr. Harcevic made more than one donation to Hodzic and it deliberately excludes the evidence of the Western Union transfer from its Sentencing Memorandum because that transfer makes it perfectly clear that the person Mr. Harcevic donated money to in December, 2013, was not one of the Turkish intermediaries Hodzic or Pazara ever used.

IV.    Co-defendant Mediha Salkicevic was significantly more culpable than Mr. Harcevic and was sentenced to 78 months with five years of supervised released.

The Final PSR, in both its original and revised forms, acknowledges and recommends that Mr. Harcevic receive a reduced adjustment for his minor role in the offence as he "was a minor participant in any criminal activity." Mr. Harcevic was noted to be one of the least culpable defendants along with Jasminka Ramic. Jasminka Ramic was sentenced to 36 months and 3 years of supervised released. Mediha Salkicevic, considered a more culpable defendant by Probation Services in their PSR, was sentenced to 78 months and 5 years of supervised released. In fashioning an appropriate sentence, judges are directed by statute to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C.S. § 3553(a)(6). Here the Court has sentenced a co-defendant with similar to Mr. Harcevic and one with more serious conduct. In the interests of justice, his

---

[8] Id.

10

sentence should not exceed that of Mediha Salkicevic and should instead, more closely align

with Jasminka Ramic's sentence or less.


Respectfully submitted,

**s/ Charles D. Swift**
Charles D. Swift, Pro Hac Attorney for the Defendant, Armin Harcevic


**s/ Catherine McDonald**
Catherine McDonald, Pro Hac Attorney for the Defendant, Armin Harcevic


**Constitutional Law Center for Muslims in America**
833 East Arapaho Rd., Suite 102
Richardson, TX 75081
972-914-2507
www.clcma.org


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this August 2nd, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.


*/s/ Charles D. Swift*
Chares D. Swift
*Pro Hac for Armin Harcevic*